1     LLOYD WINAWER (S.B. #157823)
     lwinawer@goodwinprocter.com
2     GOODWIN PROCTER LLP
     10250 Constellation Boulevard, 21st Floor
3     Los Angeles, CA  90067
     Telephone:  (310) 788-5177
4     Facsimile:    (310) 286-0992

5     Brian E. Pastuszenski (Pro Hac Vice)
     bpastuszenski@goodwinprocter.com
6     Stuart M. Glass (Pro Hac Vice)
     sglass@goodwinprocter.com
7     53 State Street
     Exchange Place
8     Boston, MA  02109
     Telephone:  (617) 570-1000
9     Facsimile:    (617) 523-1231

10    Attorneys for Defendants Angelo R. Mozilo, David J.
     Sambol, Jeffrey M. Cunningham, Robert J. Donato,
11    Martin R. Melone, Robert T. Parry, Oscar P.
     Robertson, Keith P. Russell, Harley W. Snyder, Henry
12    G. Cisneros, Stanford L. Kurland, Carlos M. Garcia,
     and Eric P. Sieracki, and Nominal Defendant
13    Countrywide Financial Corp.

14

15              **UNITED STATES DISTRICT COURT**

16              **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re Countrywide Financial Corp. Derivative Litigation | Lead Case No.  07-CV-06923-MRP (MANx) |
| | **COUNTRYWIDE DEFENDANTS' MEMORANDUM IN SUPPORT OF CROSS-MOTION TO STAY** |
| | Hearing Date:  March 20, 2008 |
| | Hearing Time:  11:00 a.m. |
| | Judge:  The Honorable Mariana R. Pfaelzer |

17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS ..................................................................................... 3

ARGUMENT ........................................................................................................ 6

POINT I      THE COURT SHOULD ENFORCE THE PSLRA
             STAY PENDING A DECISION ON
             DEFENDANTS' MOTION TO DISMISS ........................................... 6

POINT II     IN ADDITION, THIS COURT SHOULD STAY
             PLAINTIFFS' MERGER-RELATED CLAIMS IN
             FAVOR OF THE PARALLEL DELAWARE
             MERGER CASES ............................................................................ 12

             A.    The merger-related claims in this action are parallel
                   to the claims in the Delaware actions ...................................... 13

             B.    The *Colorado River* factors favor stay of the
                   merger-related claims in this action ........................................ 15

CONCLUSION ................................................................................................... 20

MEMORANDUM IN SUPPORT OF
CROSS-MOTION TO STAY

1

## TABLE OF AUTHORITIES

2

### CASES

3

*Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.,*
 843 F.2d 1253 (9th Cir. 1988) ........................................................................ 16

4

*Aquilar v. Yuma County,*
 2007 WL 2220516 (D. Ariz. Aug. 2, 2007) ............................................. 13 n.9

5

*Aronson v. Lewis,*
 473 A.2d 805 (Del. 1984) ................................................................................ 8

6

*Bernhardt v. L.A. County,*
 339 F.3d 920 (9th Cir. 2003) ........................................................................... 9

7

*Carey v. Piphus,*
 435 U.S. 247 (1978) ......................................................................................... 9

8

*City of Indianapolis v. Edmond,*
 531 U.S. 32 (2000) .......................................................................................... 8

9

10

*Colorado River Water Conservation Dist. v. United States,*
 424 U.S. 800 (1976) .................................................................................... 2, 13

11

*Daugherty v. Oppenheimer & Co.,*
 2007 WL 1994187 (N.D. Cal. July 5, 2007) ............................................ 13 n.9

12

*Davis & Cox v. Summa Corp.,*
 751 F.2d 1507 (9th Cir. 1985) ....................................................................... 15

13

14

*De Simas v. Big Lots Stores, Inc.,*
 2007 WL 686638 (N.D. Cal. Mar. 2, 2007) .................................................. 14

15

*Del Conte v. S.F. Police Dep't,*
 2007 WL 1119187 (N.D. Cal. Apr. 16, 2007) ............................................... 13

16

*Evanston Ins. Co. v. Jimco, Inc.,*
 844 F.2d 1185 (5th Cir. 1988) ....................................................................... 15

17

*Firefighters Local Union No. 1784 v. Stotts,*
 467 U.S. 561 (1984) ......................................................................................... 9

18

19

*Holder v. Holder,*
 305 F.3d 854 (9th Cir. 2002) ................................................................ 15 & n.10

20

*In re Altera Corp. Derivative Litig.,*
 2006 WL 2917578 (N.D. Cal. Oct. 11, 2006) ......................................... 7 & n.2

21

*In re Am. Funds Sec. Litig.,*
 493 F. Supp. 2d 1103 (C.D. Cal. 2007) .................................... 10, 11, 12 n.8

22

23

*In re JDS Uniphase Corp. Sec. Litig.,*
 238 F. Supp. 2d 1127 (N.D. Cal. 2002) .................................................... 7 n.2

24

*In re Lantronix, Inc. Sec. Litig.,*
 2003 WL 22462393 (C.D. Cal. Sept. 26, 2003) ....................................... 12 n.8

25

26

*In re Marvell Tech. Group Ltd. Derivative Litig.,*
 2007 WL 1545194  (N.D. Cal. May 29, 2007) ........................................ 7, 8 n.4

27

*In re Openwave Sys. Inc. S'holder Derivative Litig.,*
 503 F. Supp. 2d 1341 (N.D. Cal. 2007)......................................................... 8

28

MEMORANDUM IN SUPPORT OF
CROSS-MOTION TO STAY

*In re Refco, Inc.,*
2006 WL 2337212 (S.D.N.Y. Aug. 8, 2006) .................................................... 11

*In re Topps Co. S'holders Litig.,*
924 A.2d 951 (Del. Ch. 2007) ...................................................................... 16

*In re Trump Hotel S'holder Derivative Litig.,*
1997 WL 442135 (S.D.N.Y. Aug. 5, 1997) ....................................................... 7

*In re Vivendi Universal, S.A. Sec. Litig.,*
381 F. Supp. 2d 129 (S.D.N.Y. 2003) ....................................................... 11, 12

*In re Worldcom, Inc. Sec. Litig.,*
234 F. Supp. 2d 301 (S.D.N.Y. 2002) ........................................................... 11

*Int'l Jensen Inc.* v. *Emerson Radio Corp.,*
1996 WL 494273 (N.D. Ill. Aug. 27, 1996) ...................................................... 17

*LaDuke* v. *Burlington N. R.R. Co.,*
879 F.2d 1556 (7th Cir. 1989) ..................................................................... 13

*Medhekar* v. *U.S. Dist. Ct.,*
99 F.3d 325 (9th Cir. 1996) .................................................................... 9 n.5

*Melzer* v. *CNET Networks, Inc.,*
2006 WL 3716477 (N.D. Cal. Dec. 15, 2006) ..................................................... 7

*Monterey Mech. Co.* v. *Wilson,*
138 F.3d 1270 (9th Cir. 1998) ...................................................................... 9

*Nakash* v. *Marciano,*
882 F.2d 1411 (9th Cir. 1989) ......................................................... 13, 18 & n.4

*New Beckley Mining Corp.* v. *Int'l Union, United Mine*
*Workers of Am.,* 946 F.2d 1072 (4th Cir. 1991) ............................................... 13

*Pennsylvania* v. *Williams,*
294 U.S. 176 (1935) ............................................................................ 19 n.11

*Piven* v. *Ryan,*
2006 WL 539186 (N.D. Ill. Mar. 1, 2006) ........................................................ 8

*Rampersad* v. *Deutsche Bank Sec. Inc.,*
381 F. Supp. 2d 131 (S.D.N.Y. 2003) ............................................................ 11

*Rogers* v. *Guar. Trust Co. of New York,*
288 U.S. 123 (1933) ............................................................................ 3, 16

*Romine* v. *Compuserve Corp.,*
160 F.3d 337 (6th Cir. 1998) ...................................................................... 14

*Sarantkis* v. *Gruttadauria,*
2002 WL 1803750 (N.D. Ill. Aug. 5, 2002) ...................................................... 12

*Selbst* v. *McDonald's Corp.,*
2006 U.S. Dist. LEXIS 8862 (N.D. Ill. Mar. 1, 2006) ........................................... 10

*SG Cowen Sec. Corp.* v. *U.S. Dist. Ct.,*
189 F.3d 909 (9th Cir. 1999) ............................................................. 6 n.2, 7 n.4

*Sisk* v. *Guidant Corp.,*
2007 WL 1035090 (S.D. Ind. Mar. 30, 2007) ................................................... 12

*Spiegel* v. *Buntrock,*
571 A.2d 767 (Del. 1990) ........................................................................... 8

- iv -

MEMORANDUM IN SUPPORT OF
CROSS-MOTION TO STAY

*Teamsters Local Nos. 175 & 505 Pension Trust Fund* v. *IBP, Inc.*,
    123 F. Supp. 2d 514 (D.S.D. 2000)...................................................................17

*Thornburgh* v. *Am. Coll. of Obstetricians and Gynecologists*,
    476 U.S. 747 (1986) ..................................................................................9

*Travelers Indem. Co.* v. *Madonna*,
    914 F.2d 1364 (9th Cir. 1990)......................................................15 n.10, 18 n.11

### STATUTES AND RULES

15 U.S.C. § 78u-4(b)(3)(B) ........................................................................6, 7, 9

15 U.S.C. § 78u-4(b)(3)(C)(i) .......................................................................11

Cal. Corp. Code § 2116 ...............................................................................15

Fed. R. Civ. P. 23.1(b)(3) ...........................................................................8

### OTHER AUTHORITIES

H.R. Conf. Rep. No. 104-369 (1995),
    *as reprinted in* 1995 U.S.C.C.A.N. 730 ..........................................................10

S. Rep. No. 104-98 (1995),
    *as reprinted in* 1995 U.S.C.C.A.N. 679 ................................................6, 7 n.2, 9

MEMORANDUM IN SUPPORT OF
CROSS-MOTION TO STAY

1        Nominal Defendant Countrywide Financial Corporation ("Countrywide")

2 and Defendants Angelo R. Mozilo, David J. Sambol, Jeffrey M. Cunningham,

3 Robert J. Donato, Martin R. Melone, Robert T. Parry, Oscar P. Robertson, Keith

4 P. Russell, Harley W. Snyder, Henry G. Cisneros, Stanford L. Kurland, Carlos

5 M. Garcia, and Eric P. Sieracki (collectively, the "Countrywide Defendants")

6 respectfully submit this memorandum in support of their cross-motion to stay.

7 For the reasons set forth below, this Court should (1) enforce the PSLRA stay

8 pending a decision on defendants' motion to dismiss, and (2) stay litigation of

9 plaintiffs' newly added merger claims in favor of parallel merger litigation

10 pending in the Delaware Court of Chancery.

11 **PRELIMINARY STATEMENT**

12        On February 15, plaintiffs filed two motions for extraordinary relief.

13 They ask this Court to enjoin the $4 billion merger between Countrywide and

14 Bank of America Corporation, preventing Countrywide's shareholders from

15 deciding for themselves whether the transaction is in their interests.  Plaintiffs

16 also ask this Court to impose a "constructive trust," stripping Countrywide of

17 derivative claims that belong to the corporation without any prior showing of

18 wrongdoing.  If the Court considers these extraordinary motions, it will find that

19 they are completely without merit for the reasons that will be set forth in

20 defendants' forthcoming opposition brief.  But the Court need not reach the

21 merits of plaintiffs' motions at this time.  The Court should instead stay this

22 action on two independent grounds.

23        *First*, because the consolidated complaint asserts claims under the 1934

24 Securities Exchange Act, the Private Securities Litigation Reform Act

25 ("PSLRA") imposes an automatic stay of "all discovery and other proceedings"

26 until the Court rules on defendants' motion to dismiss, which is due to be filed

27 on March 14.  The preliminary injunction hearing that plaintiffs want is a

28 "proceeding" under any conceivable understanding of the term and, as a result, is

MEMORANDUM IN SUPPORT OF
CROSS-MOTION TO STAY

1    barred by the plain language of the statute.  Moreover, while the PSLRA gives

2    the Court discretion to allow "particularized discovery" upon a showing that it is

3    necessary "to preserve evidence or to prevent undue prejudice," plaintiffs have

4    made neither showing.  In support of their preliminary injunction motion,

5    plaintiffs ask for broad, expedited discovery into virtually every aspect of

6    Countrywide's business over the past four years.  They cannot make any credible

7    showing that such documents will be lost or destroyed during the short amount of

8    time it will take the Court to decide defendants' motion to dismiss.  Nor can

9    plaintiffs show that they will be harmed in any way if the Court enforces the

10   PSLRA stay.

11       *Second*, in addition to the statutory stay, this Court should stay plaintiffs'

12   merger-related claims under *Colorado River Water Conservation District* v.

13   *United States*, 424 U.S. 800 (1976).  When plaintiffs filed their consolidated

14   complaint, there were already seven previously filed lawsuits attacking the

15   proposed merger, three of which were filed in Delaware, the state in which

16   Countrywide is incorporated.  The Delaware Court of Chancery, which

17   specializes in litigating merger cases, has already appointed a lead plaintiff and

18   lead counsel.  Declaration of Lloyd Winawer ("Winawer Decl.") Ex. 1.  The

19   parties to the Delaware action have also agreed upon the form of a scheduling

20   stipulation and proposed order that sets a preliminary injunction hearing for May

21   20, 2008, and provides for expedited discovery in advance of that hearing.

22   Winawer Decl. Ex. 2.  The Countrywide Defendants submit that they should not

23   be subjected to the burdens of simultaneous litigation in multiple forums on

24   identical claims relating to the same proposed merger, especially where the

25   Delaware courts are proceeding to decide the issues.  As the United States

26   Supreme Court has held, it "has long been settled doctrine that a court — state or

27   federal — sitting in one state will, as a general rule, decline to interfere with, or

28   control by injunction or otherwise, [a] corporation organized under the laws of

- 2 -                                MEMORANDUM IN SUPPORT OF
                                     CROSS-MOTION TO STAY

1   another state but will leave controversies as to such matters to the courts of the

2   state of the domicile." *Rogers* v. *Guar. Trust Co. of New York*, 288 U.S. 123,

3   130 (1933).

4        This Court should thus enforce the PSLRA stay pending resolution of

5   defendants' motion to dismiss, and it should stay plaintiffs' merger-related

6   claims until they are resolved by the Delaware courts.

7                      **STATEMENT OF FACTS**

8        Plaintiffs commenced this action in October 2007 following news of

9   Countrywide's well-publicized financial difficulties caused by the troubles in the

10  housing and credit markets.  In their original complaints, plaintiffs sought to hold

11  certain Countrywide directors and officers personally liable to the corporation for

12  its problems.  In January 2008, the Court consolidated the derivative actions,

13  appointed lead plaintiffs, and entered a scheduling order directing plaintiffs to

14  file a consolidated complaint by February 15.

15       On January 11, 2008, as troubles in the housing and credit markets

16  deepened, Countrywide agreed to merge with a subsidiary of Bank of America

17  Corporation in a stock-for-stock transaction valued at approximately $4 billion,

18  or $7.16 per Countrywide share.  *See* Compl. ¶¶ 343-44.  The proposed merger is

19  subject to a vote of Countrywide's shareholders, who will have the opportunity

20  to reject the deal if they do not like its terms.  *See, e.g.*, Compl. ¶ 556.  Bank of

21  America has announced that it expects the merger to close in the third quarter of

22  2008.  Compl. ¶ 343.

23       On February 15, plaintiffs filed their consolidated complaint.  Like

24  plaintiffs' original complaints, the consolidated complaint asserts derivative

25  claims seeking to hold certain Countrywide directors and officers liable to the

26  corporation.  Several of plaintiffs' claims arise under the Securities Exchange

27  Act:  plaintiffs allege that the defendants caused Countrywide to disseminate

28  materially false and misleading information in proxy statements and other SEC

1  filings, in violation of Sections 10(b) and 14(a) of the Exchange Act, *see, e.g.*,

2  Compl. ¶¶ 275-320, 517-28, 539-47, and that these misleading disclosures

3  artificially inflated the price of Countrywide's stock for a period of

4  approximately four years, during which time certain officers and directors sold

5  Countrywide stock, making illegal profits in violation of Sections 20(a) and 20A

6  of the Exchange Act. *See, e.g.*, Compl. ¶¶ 321-42, 529-38.

7       In addition to these derivative claims, plaintiffs' new complaint tacks on

8  class-action, merger-related claims.  These claims allege that Countrywide's

9  directors agreed to the merger at an inadequate price in exchange for Bank of

10  America's agreement to indemnify the directors against liability in this and other

11  pending litigations. *See, e.g.*, Compl. ¶¶ 358, 551.  The complaint further alleges

12  that the merger agreement fails to adequately value the derivative claims and that

13  the merger agreement presents "an imminent threat to the standing of

14  stockholders to continue to pursue the derivative claims on behalf of

15  Countrywide" because Delaware law provides that standing to pursue a

16  derivative claim on behalf of a corporation passes to the acquiring company in a

17  merger.  Compl. ¶¶ 357-58, 569.

18       Fearing that completion of the merger would terminate their lawsuit,

19  plaintiffs made a motion for "constructive trust and preliminary injunction."

20  This motion seeks to either enjoin the merger altogether or to override the

21  governing rule of law that would terminate plaintiffs' derivative standing upon

22  consummation of the merger.  If plaintiffs do not get this relief, they want the

23  Court to hold a trial before the consummation of the merger.

24       In support of their motion, plaintiffs have moved for expedited discovery.

25  Plaintiffs have submitted a proposed document request seeking several broad

26  categories of information, including *all documents* produced by defendants in

27  any pending securities, ERISA, or fiduciary duty litigation; *all documents*

28  produced by defendants in governmental investigations; *all documents* prepared

- 4 -

MEMORANDUM IN SUPPORT OF
CROSS-MOTION TO STAY

in connection with meetings of Countrywide's board of directors or senior management *since 2004* concerning topics as broad as its "lending business" and its "accounting policies and methods"; and *all documents* concerning Countrywide's Rule 10b5-1 plans.  Nicholas Decl. Ex. B.[1]

Plaintiffs in this action are not the only Countrywide shareholders who have filed suits seeking to enjoin the proposed merger with Bank of America.  The present action was the eighth, and last, suit to assert claims related to the merger.  In Delaware, Countrywide's state of incorporation, litigation challenging the merger is already well underway.  The first Delaware action was filed on January 14 — over a month before plaintiffs in this action amended their complaint to assert claims related to the merger.  Winawer Decl. Ex. 3.  Two additional actions were filed shortly thereafter, and on January 29, the Delaware Court of Chancery entered an order consolidating the cases and appointing lead plaintiffs and lead counsel.  Winawer Decl. Ex. 1.

The Delaware plaintiffs have now filed a consolidated complaint that includes, among other things, the same principal allegations challenging the merger that plaintiffs advance in this action.  The Delaware consolidated complaint alleges, for example, that the merger agreement "fails to adequately value the derivative claims" and that Countrywide's directors agreed to it "to indemnify themselves and escape potential liability arising from their risk-laden lending practices and the Derivative Actions currently pending against them."  Winawer Decl. Ex. 4 at ¶¶ 66, 79.  The parties to the Delaware action have also agreed upon the form of a scheduling stipulation and proposed order providing for expedited discovery and scheduling a preliminary injunction hearing on May 20, 2008, before the anticipated closing date of the merger.  Winawer Decl. Ex.

---

[1]    Citations to "Nicholas Decl." refer to the Declaration of Blair A. Nicholas in Support of Plaintiffs' Motion for Expedited Discovery, filed by plaintiffs on February 15, 2008.

- 5 -

MEMORANDUM IN SUPPORT OF
CROSS-MOTION TO STAY

1  2.  Under the stipulation, defendants are scheduled to begin document production

2  in the week of March 3, and depositions will begin on March 31.  *Id.*

3  **ARGUMENT**

4  **POINT I**

5  **THE COURT SHOULD ENFORCE THE PSLRA STAY PENDING A**
6  **DECISION ON DEFENDANTS' MOTION TO DISMISS**

7  Plaintiffs' motion for a preliminary injunction asks this Court to stop a $4

8  billion merger or, in the alternative, to issue an order expediting this litigation

9  and scheduling trial to conclude in a few short months, before the merger closes.

10  Simultaneously, plaintiffs have moved for expedited discovery, which would

11  require Countrywide to produce all documents concerning any meeting of its

12  board or senior management relating to virtually every aspect of Countrywide's

13  business over a "relevant period" of *more than four years.*

14  Plaintiffs' attempt to subject defendants to such expedited and

15  burdensome proceedings before their complaint has survived a motion to dismiss

16  is contrary to the plain language of the PSLRA.  The statute provides that "[i]n

17  any private action arising under" the Securities Exchange Act, "*all discovery and*

18  *other proceedings shall be stayed* during the pendency of any motion to

19  dismiss."  15 U.S.C. § 78u-4(b)(3)(B) (emphasis added).  This broad provision

20  has only one narrow exception:  the Court may allow "*particularized discovery*

21  [that] is necessary to preserve evidence or to prevent undue prejudice."  *Id.*

22  (emphasis added).  In enacting this broad stay provision, Congress sought to

23  prevent plaintiffs from extracting coercive settlements by subjecting defendants

24  to burdensome litigation before "the court has sustained the legal sufficiency of

25  the complaint."  S. Rep. No. 104-98, at 14 (1995), *as reprinted in* 1995

26  U.S.C.C.A.N. 679, 693.[2]

27  _____

28  [2]  Even though defendants have not yet filed their motion to dismiss, the
PSLRA stay is already in effect.  It applies from the filing of the case until "the

MEMORANDUM IN SUPPORT OF
CROSS-MOTION TO STAY

1    The PSLRA stay clearly applies to this case, which expressly asserts
2    causes of action for violations of various sections of the Exchange Act and the
3    SEC rules promulgated thereunder. *See* Compl. ¶¶ 517-47 (asserting claims
4    under Sections 10(b), 14(a), 20(a), and 20A of the Exchange Act, and SEC Rules
5    10b-5 and 14a-9); *see also id.* ¶ 43 (alleging that this Court has jurisdiction
6    because Counts VI-IX arise under the Exchange Act).

7    Plaintiffs contend that the stay does not apply because this case asserts
8    derivative claims. Pl. Br. at 10.[3]  This contention is contrary to the plain
9    language of the statute, which provides that the stay applies to "*any* private
10   action." 15 U.S.C. § 78u-4(b)(3)(B) (emphasis added). Courts in this Circuit
11   and elsewhere have consistently rejected plaintiffs' argument and held that the
12   PSLRA stay applies to derivative actions asserting Exchange Act claims. *See*
13   *Melzer* v. *CNET Networks, Inc.*, 2006 WL 3716477, at *2 (N.D. Cal. Dec. 15,
14   2006) ("No decisions have been found where the PSLRA's stay was denied
15   where plaintiffs brought derivative 1934 Act claims. . . ."); *In re Marvell Tech.*
16   *Group Ltd. Derivative Litig.*, 2007 WL 1545194, at *2  (N.D. Cal. May 29,
17   2007); *In re Altera Corp. Derivative Litig.*, 2006 WL 2917578, at *1 (N.D. Cal.
18   Oct. 11, 2006); *In re Trump Hotel S'holder Derivative Litig.*, 1997 WL 442135,
19   at *2 (S.D.N.Y. Aug. 5, 1997).[4]

20   court has sustained the legal sufficiency of the complaint." *SG Cowen Sec. Corp.*
21   v. *U.S. Dist. Ct.*, 189 F.3d 909, 913 (9th Cir. 1999) (quoting S. Rep. No. 104-98,
     at 14, *as reprinted in* 1995 U.S.C.C.A.N. at 693); *see also In re Altera Corp.*
22   *Derivative Litig.*, 2006 WL 2917578, at *1 (N.D. Cal. Oct. 11, 2006); *In re JDS*
23   *Uniphase Corp. Sec. Litig.*, 238 F. Supp. 2d 1127, 1133 (N.D. Cal. 2002).

24   [3]    Citations to "Pl. Br." refer to the Memorandum of Points and Authorities in
     Support of Plaintiffs' Motion for Expedited Discovery, filed by plaintiffs on
25   February 15, 2008.

26   [4]    The PSLRA stay applies with equal force to plaintiffs' pendent state-law
27   claims. *See SG Cowen*, 189 F.3d at 913 n.1 ("Congress' attempt to address
     [concerns of discovery abuse] would be rendered meaningless if securities
28   plaintiffs could circumvent the stay simply by asserting pendent state law claims

- 7 -                          MEMORANDUM IN SUPPORT OF
                               CROSS-MOTION TO STAY

1    Indeed, if anything, a stay of "all discovery and other proceedings"

2  pending decision on a motion to dismiss is especially appropriate in a derivative

3  action like this one. "A cardinal precept of [corporate law] is that directors,

4  rather than shareholders, manage the business and affairs of the corporation."

5  *Aronson* v. *Lewis*, 473 A.2d 805, 811 (Del. 1984). The right to manage the

6  business and affairs of the corporation includes the right to decide whether to

7  "bring a law suit or to refrain from litigating a claim on behalf of a corporation."

8  *Spiegel* v. *Buntrock*, 571 A.2d 767, 773 (Del. 1990). A shareholder plaintiff is

9  not even entitled to bring such a claim unless it establishes that demand on the

10  corporation's board of directors would have been futile. *See* Fed. R. Civ. P.

11  23.1(b)(3). Thus, even when the PSLRA stay does not apply, federal courts have

12  stayed derivative actions until they have survived a motion to dismiss for failure

13  to make demand. *See, e.g.*, *In re Openwave Sys. Inc. S'holder Derivative Litig.*,

14  503 F. Supp. 2d 1341, 1353 (N.D. Cal. 2007) (staying discovery because "Rule

15  23.1 reflects a Congressional intent that derivative actions pass certain hurdles

16  before being allowed to proceed with the normal course of litigation, including

17  discovery"); *Piven* v. *Ryan*, 2006 WL 539186, at *5 (N.D. Ill. Mar. 1, 2006)

18  ("Generally speaking, the prevailing view seems to be that, in a derivative action,

19  discovery should not be allowed during the pendency of a motion to dismiss.").

20    Plaintiffs' request for a preliminary injunction hearing before a decision

21  on defendants' motion to dismiss is a clear violation of the statutory stay. A

22  preliminary injunction hearing is obviously a "proceeding" within any ordinary

23  meaning of that term. Not surprisingly, numerous United States Supreme Court

24  and Ninth Circuit cases refer to a preliminary injunction motion or hearing as a

25  "proceeding." *See, e.g.*, *City of Indianapolis* v. *Edmond*, 531 U.S. 32, 36 (2000);

26

27  _____

28  in federal court in conjunction with their federal law claims." (alteration in
original)); *In re Trump Hotel*, 1997 WL 442135, at *2 (same).

- 8 -                              MEMORANDUM IN SUPPORT OF
                                    CROSS-MOTION TO STAY

*Thornburgh* v. *Am. Coll. of Obstetricians and Gynecologists*, 476 U.S. 747, 826 (1986) (O'Connor, J., dissenting); *Firefighters Local Union No. 1784* v. *Stotts*, 467 U.S. 561, 591 n.5 (1984) (Stevens, J., concurring in the judgment); *Carey* v. *Piphus*, 435 U.S. 247, 251 (1978); *Bernhardt* v. *L.A. County*, 339 F.3d 920, 925 (9th Cir. 2003); *Monterey Mech. Co.* v. *Wilson*, 138 F.3d 1270, 1278 (9th Cir. 1998).[5]

And enforcement of the PSLRA stay is also clearly consistent with the policy behind the statute. Just as defendants should not be put to the burden and expense of discovery before the Court has sustained the legal sufficiency of the complaint, they should not be put to the more onerous burden of emergency, merits-based evidentiary proceedings in which their legal rights may be affected. Imposing such burdens on defendants at this stage of the litigation would simply increase the risk of coercion that the PSLRA stay was designed to prevent. *See* S. Rep. No. 104-98, at 14, *as reprinted in* 1995 U.S.C.C.A.N. at 693.[6]

Plaintiffs' request for expedited discovery is equally flawed. Plaintiffs cannot show that the discovery they seek is "particularized" or that it is "necessary to preserve evidence or to prevent undue prejudice." 15 U.S.C. § 78u-4(b)(3)(B). Congress has directed that these conditions for lifting the stay

---

[5] The Ninth Circuit addressed the meaning of "discovery and other proceedings" under the PSLRA in *Medhekar* v. *U.S. Dist. Ct.*, 99 F.3d 325 (9th Cir. 1996). The court held that initial disclosures under Rule 26(a) must be stayed during the pendency of a motion to dismiss because they are "discovery" or, at a minimum, "other proceedings." *Id.* at 328-29. The court noted that the term "other proceedings" should not be construed "either very narrowly or very broadly," and it includes "litigation activity relating to discovery." *Id.* at 328. It would not take a very broad reading of the term "other proceedings" to find that it includes a preliminary injunction hearing — an evidentiary proceeding, in connection with which plaintiffs seek expedited discovery.

[6] Indeed, while the PSLRA grants some discretion to lift the stay to allow "particularized discovery" before the motion to dismiss has been decided, it grants no discretion to lift the stay to adjudicate preliminary injunction proceedings.

- 9 -                                        MEMORANDUM IN SUPPORT OF
                                             CROSS-MOTION TO STAY

1   will only be satisfied  in "exceptional circumstances."  H.R. Conf. Rep. No. 104-

2   369, at 37 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 736.

3         *First*, there is nothing "particularized" about the discovery that plaintiffs

4   are requesting.  They are not seeking just deal-related discovery, but rather

5   discovery covering virtually every aspect of Countrywide's business stretching

6   back more than four years.  Plaintiffs request, among other things, all documents

7   prepared in connection with any meeting of Countrywide's board or senior

8   management since January 1, 2004 concerning Countrywide's "lending

9   business," "accounting policies and methods," "credit risk assessment and

10  management," or "hedging activities," and "[a]ll documents concerning

11  Countrywide Senior Management and Director Rule 10b5-1 plans."  Nicholas

12  Decl. Ex. B.  This is not even close to what the PSLRA means by "particularized

13  discovery."  *See, e.g.*, *In re Am. Funds Sec. Litig.*, 493 F. Supp. 2d 1103, 1107

14  (C.D. Cal. 2007) (holding that "particularized discovery" should be limited to

15  specifically identified documents); *Selbst* v. *McDonald's Corp.*, 2006 U.S. Dist.

16  LEXIS 8862, at *8-9 (N.D. Ill. Mar. 1, 2006) (holding that request for "general

17  lifting of the discovery stay as it applies to all document requests to defendants"

18  does not meet "particularized discovery" standard).

19        *Second*, plaintiffs have not articulated any prejudice caused by the stay.

20  Plaintiffs argue that they will be harmed if the merger goes through and they lose

21  standing to sue.  They allege that "Countrywide shareholders are in danger of

22  being left without a remedy for the violations alleged in the Complaint."  Pl. Br.

23  at 13.  But this derivative action is brought on behalf of Countrywide, not its

24  shareholders.  Countrywide — the real party in interest — will not be prejudiced

25  at all.  Its claims will not be lost or diminished in any respect while plaintiffs

26  litigate the motion to dismiss.[7]

27

28  [7]    Countrywide shareholders' interests will also continue to be protected in the
    parallel class action lawsuits pending in this Court.  Those actions assert claims

MEMORANDUM IN SUPPORT OF
                                                  CROSS-MOTION TO STAY

1    Nor can plaintiffs circumvent the stay by arguing that Countrywide is

2    producing documents to government agencies or plaintiffs in other civil actions.

3    This Court and others have repeatedly held that production to third parties does

4    not provide a basis for lifting the stay absent some specific showing of *prejudice*

5    to the plaintiffs, as the statute plainly requires. *See, e.g.*, *In re Am. Funds*, 493 F.

6    Supp. 2d at 1106; *In re Refco, Inc.*, 2006 WL 2337212, at *2-3 (S.D.N.Y. Aug.

7    8, 2006); *Rampersad* v. *Deutsche Bank Sec. Inc.*, 381 F. Supp. 2d 131, 133-34

8    (S.D.N.Y. 2003); *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 129,

9    130-31 (S.D.N.Y. 2003). In each of the cases plaintiffs cite, the courts found

10   some specific harm that the plaintiffs would suffer if they were not provided

11   access to a limited set of documents. For example, in *In re Worldcom, Inc.*

12   *Securities Litigation*, 234 F. Supp. 2d 301 (S.D.N.Y. 2002), the court allowed

13   limited document discovery because court-ordered coordinated settlement

14   discussions were about to begin in several related actions, and the securities

15   plaintiffs would be prejudiced in those discussions if they were the only parties

16   without access to the documents. *Id.* at 305-06. By contrast, plaintiffs here have

17   not articulated that any activity in the governmental investigations or other

18   actions will prejudice them in any way if they must wait until after their

19   complaint survives a motion to dismiss to get discovery.

20       *Third*, plaintiffs' arguments that the stay is necessary to preserve

21   evidence is also without merit. Countrywide is preserving documents pursuant

22   to its legal obligations and will continue to do so whether or not the merger

23   happens. *See* 15 U.S.C. § 78u-4(b)(3)(C)(i) (requiring parties to preserve

24   documents during pendency of PSLRA stay). Plaintiffs' claims that evidence

25   will somehow get lost in the shuffle during the merger between two sophisticated

26   _____

27   against Countrywide's CEO, Angelo Mozilo, and other company insiders that are
     similar to the claims in this action. Those class-action claims will survive the

28   closing of the merger.

- 11 -                    MEMORANDUM IN SUPPORT OF
                          CROSS-MOTION TO STAY

1  modern corporations is nothing more than pure speculation, which the courts

2  have held is not sufficient to lift the PSLRA's automatic stay.  *See, e.g.*, *Sisk* v.

3  *Guidant Corp.*, 2007 WL 1035090, at *4 (S.D. Ind. Mar. 30, 2007) ("Plaintiffs

4  articulate fears that documents 'may get lost in the shuffle or misplaced' in the

5  merger of Guidant and Boston Scientific, but such speculative concerns also do

6  not rise to the level of undue prejudice."); *In re Vivendi Universal*, 381 F. Supp.

7  2d at 130 (holding that plaintiffs' concern that "documents may be lost with the

8  transfer of control over portions of defendants' business" was not sufficient to

9  lift stay, because "[a] party alleging that discovery is 'necessary to preserve

10  evidence' must . . . make a specific showing that the 'loss of evidence is

11  imminent as opposed to merely speculative'" (quoting *Sarantkis* v. *Gruttadauria*,

12  2002 WL 1803750, at *2 (N.D. Ill. Aug. 5, 2002)).[8]

## POINT II

### IN ADDITION, THIS COURT SHOULD STAY PLAINTIFFS' MERGER-RELATED CLAIMS IN FAVOR OF THE PARALLEL DELAWARE MERGER CASES

16      In addition to the PSLRA stay, defendants further submit that they should

17  not be subjected to the burdens of simultaneous litigation in multiple forums on

18  parallel claims relating to the proposed merger.  Plaintiffs in this action seek to

19  litigate merger-related claims that are already the subject of ongoing proceedings

20  in Delaware, the state whose substantive law governs those claims.  Parallel

21  adjudication of the same claims by different Courts would be wasteful,

_____

[8]      To the extent that documents plaintiffs seek have been or will be produced to government agencies or other third parties, the risk of loss or destruction is even lower.  *See, e.g.*, *In re Am. Funds*, 493 F. Supp. 2d at 1106 ("[O]nce the documents are in the hands of a regulatory or law enforcement agency, they are no longer subject to loss or destruction."); *In re Lantronix, Inc. Sec. Litig.*, 2003 WL 22462393, at *2 (C.D. Cal. Sept. 26, 2003) ("[B]ecause Plaintiff only seeks documents which have already been produced and are in the custody of third parties, the risk that evidence will be lost is negligible.").

inefficient, and chaotic for Countrywide and its shareholders.  Under the doctrine established by the Supreme Court in *Colorado River Water Conservation District* v. *United States*, 424 U.S. 800 (1976), a federal district court may stay proceedings in deference to pending state-court litigation that involves substantially similar issues.  Under *Colorado River*, this Court should stay the merger-related claims until they are resolved by the Delaware courts.[9]

**A.     The merger-related claims in this action are parallel to the claims in the Delaware actions.**

*Colorado River* applies when "parallel" cases are pending in both state and federal court.  "[E]xact parallelism" is not required; "[i]t is enough if the two proceedings are 'substantially similar.'"  *Nakash* v. *Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989).  Cases are "substantially similar" when they arise out of the "same conduct" and involve an "overlap of key parties."  *Del Conte* v. *S.F. Police Dep't*, 2007 WL 1119187, at *3 (N.D. Cal. Apr. 16, 2007); *accord New Beckley Mining Corp.* v. *Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991) ("Suits are parallel if substantially the same parties litigate substantially the same issues in different forums."); *LaDuke* v. *Burlington N. R.R. Co.*, 879 F.2d 1556, 1559 (7th Cir. 1989) (same).

_____

[9]     Because defendants are seeking only a stay, not dismissal, the Court would retain jurisdiction over the merger-related claims in the event that they are not fully resolved in Delaware.  Moreover, defendants' *Colorado River* motion is aimed only at plaintiffs' recently added claims related to the merger, not the derivative claims that were the subject of plaintiffs' original complaints.  The *Colorado River* doctrine allows this Court to stay the merger-related claims while allowing the derivative claims to go forward.  *See Daugherty* v. *Oppenheimer & Co.*, 2007 WL 1994187, at *6-7 (N.D. Cal. July 5, 2007) (staying several claims and rejecting "plaintiff's argument that the *Colorado River* doctrine may not be used to dismiss or stay only part of an action"); *see also Aquilar* v. *Yuma County*, 2007 WL 2220516, at *5 (D. Ariz. Aug. 2, 2007) (holding that "the best course would be to sever and dismiss the pendent state court claims and to stay the [federal] claim").

MEMORANDUM IN SUPPORT OF
                                         CROSS-MOTION TO STAY

1       The merger-related claims here are substantially similar to the claims in
2   the consolidated Delaware action.  Both actions raise substantially the same
3   issues.  The plaintiffs in both cases allege that Countrywide's directors breached
4   their fiduciary duties by agreeing to the merger with Bank of America, and they
5   allege that Bank of America aided and abetted that breach of fiduciary duty.
6   Both sets of plaintiffs also make specific allegations about the relationship
7   between the proposed merger and pending derivative litigation.  Like plaintiffs
8   here, the Delaware plaintiffs allege that "[t]he Proposed Acquisition price . . .
9   fails to adequately value the derivative claims" and that "[t]he Individual
10  Defendants seek to use the Proposed Acquisition . . . as a means to indemnify
11  themselves and escape potential liability arising from their risk-laden lending
12  practices and the Derivative Actions currently pending against them."  Winawer
13  Decl. Ex. 4 ¶¶ 66, 79; *see also*, *e.g.*, *id.* ¶¶ 2-3, 5, 8, 43, 53, 67, 70, 83, 86, 88.
14      The parties in the two actions are also substantially the same.  Plaintiffs
15  in this action assert their merger-related claims against Countrywide's current
16  directors and Bank of America.  *See* Compl. ¶¶ 548-71.  The Delaware action
17  names the exact same defendants, as well as Countrywide itself.  *See* Winawer
18  Decl. Ex. 4 ¶¶ 13-24.  Although the named plaintiffs in the two actions are
19  different, they purport to represent an identical class of Countrywide public
20  shareholders.  *Compare* Compl. ¶ 387, *with* Winawer Decl. Ex. 4 ¶ 25.  Courts
21  have held that, in such circumstances, "the nonidentity of the named class
22  representatives should in no way undermine a court's determination that the suits
23  in question are otherwise parallel."  *Romine* v. *Compuserve Corp.*, 160 F.3d 337,
24  340 (6th Cir. 1998); *see also De Simas* v. *Big Lots Stores, Inc.*, 2007 WL
25  686638, at *7 (N.D. Cal. Mar. 2, 2007) (granting stay where two actions were
26  brought on behalf of "overlapping classes").
27
28

                                      - 14 -

**B.**     The *Colorado River* **factors favor stay of the merger-related claims in this action.**

Because the merger-related claims in this action are parallel to the Delaware actions, this Court should apply the factors identified in *Colorado River* and its progeny to determine whether to stay those claims.  The relevant factors are (1) whether federal law or state law provides the rule of decision on the merits, (2) the desirability of avoiding piecemeal litigation, (3) whether the state court proceedings are adequate to protect the federal plaintiffs' rights, and (4) the order in which jurisdiction was obtained by the concurrent forums. *Holder* v. *Holder*, 305 F.3d 854, 870 (9th Cir. 2002).  Each factor favors abstention.[10]

*First*, the merger-related claims in this action are based exclusively on state-law causes of action for breach of fiduciary duty and do not raise any federal issues.  *See* Compl. ¶¶ 548-71.  Under the "internal affairs" doctrine, the law of Countrywide's state of incorporation, Delaware, applies to such fiduciary-duty claims.  *See, e.g.*, *Davis & Cox* v. *Summa Corp.*, 751 F.2d 1507, 1527 (9th Cir. 1985); *see also* Cal. Corp. Code § 2116 ("The directors of a foreign corporation transacting intrastate business are liable to the corporation [and] its shareholders . . . according to any applicable laws of the state or place of incorporation . . . .").  Abstention is particularly appropriate in cases raising

---

[10]     Two additional factors are not applicable here:  (1) whether the state court first assumed jurisdiction over property, and (2) the inconvenience of the federal forum. *Holder*, 305 F.3d at 870.  Neither this action nor the Delaware action involves jurisdiction over property, and defendants do not contend that the federal forum is itself inconvenient.  Any contention by plaintiffs that this forum is more convenient for them is not relevant, as "[t]he question in the end is not whether the party opposing the stay can demonstrate that the federal forum is a 'better' or 'more convenient' forum." *Travelers Indem. Co.* v. *Madonna*, 914 F.2d 1364, 1368 (9th Cir. 1990) (quoting *Evanston Ins. Co.* v. *Jimco, Inc.*, 844 F.2d 1185, 1192 (5th Cir. 1988)) (alteration in original) (internal quotation marks omitted).

MEMORANDUM IN SUPPORT OF
CROSS-MOTION TO STAY

1    issues of state corporate law, as it "has long been settled doctrine that a court —

2    state or federal — sitting in one state will, as a general rule, decline to interfere

3    with, or control by injunction or otherwise, [a] corporation organized under the

4    laws of another state but will leave controversies as to such matters to the courts

5    of the state of the domicile." *Rogers* v. *Guar. Trust Co. of New York*, 288 U.S.

6    123, 130 (1933).

7            *Second*, stay of the merger-related claims in this action would avoid

8    piecemeal litigation. "Piecemeal litigation occurs when different tribunals

9    consider the same issue, thereby duplicating efforts and possibly reaching

10   different results." *Am. Int'l Underwriters (Philippines), Inc.* v. *Cont'l Ins. Co.*,

11   843 F.2d 1253, 1258 (9th Cir. 1988). The risk of duplicative litigation is

12   particularly acute here. The plaintiffs in both this Court and Delaware seek

13   expedited discovery and a preliminary injunction hearing prior to the closing of

14   the merger. Permitting such expedited litigation to go forward simultaneously in

15   two forums would impose significant burdens on the defendants while wasting

16   the scarce resources of two court systems. If this Court decides to hear plaintiffs'

17   merger-related claims, such duplication will certainly occur, as the Delaware

18   action is already going forward. The Delaware court has entered a consolidation

19   order and the parties have agreed to a schedule that provides for expedited

20   discovery and a preliminary injunction hearing. Winawer Decl. Exs. 1-2. The

21   court is unlikely to stay its hand in a shareholder class action requiring the

22   application of Delaware corporate law. *See In re Topps Co. S'holders Litig.*, 924

23   A.2d 951, 953 (Del. Ch. 2007) (denying stay of putative shareholder class action,

24   despite first-filed actions in New York, stating "[i]n a representative action such

25   as this one, the desire of an individual plaintiff to litigate in a forum other than

26   the state of incorporation has no legal or equitable force").

27           The risk of inconsistent results is also extremely high because the

28   plaintiffs in both jurisdictions seek injunctions against the consummation of the

- 16 -                          MEMORANDUM IN SUPPORT OF
                                CROSS-MOTION TO STAY

merger.  Inconsistent injunctions could create great uncertainty as to whether, and on what terms, the transaction could go forward.  Such uncertainty would be detrimental to not only the named parties in this action, but to all members of plaintiffs' putative shareholder class and to the financial markets as a whole, which have closely followed this proposed multi-billion-dollar transaction in the struggling mortgage industry.  Facing similarly duplicative merger litigation, the District of South Dakota stayed its hand in favor of litigation in Delaware, noting that uniform application of the law would benefit all interested parties:

> All of the shareholders of [the company] as well as the Defendants deserve a clear, uniform, and expeditious resolution of the issues presented here and in Delaware.  Since only one court should proceed ahead to accomplish that goal, it should be a court in Delaware, which can resolve all of the shareholders' claims by applying Delaware law to the facts.  Federal district courts have abstained before in circumstances that were similar, though not as compelling, as those presented here.

*Teamsters Local Nos. 175 & 505 Pension Trust Fund* v. *IBP, Inc.*, 123 F. Supp. 2d 514, 519 (D.S.D. 2000); *see also Int'l Jensen Inc.* v. *Emerson Radio Corp.*, 1996 WL 494273, at *6-7 (N.D. Ill. Aug. 27, 1996) (abstaining from consideration of motion to enjoin merger transaction where parallel litigation was pending in Delaware).

*Third*, the Delaware Court of Chancery is obviously an adequate forum to protect the rights of all interested parties.  All of plaintiffs' merger-related claims arise under Delaware law, and substantially similar claims are already being litigated in Delaware.  The Delaware Court of Chancery is widely recognized for its expertise in applying Delaware's body of corporate law, and it has the power to grant any relief that Delaware law allows.  *See IBP*, 123 F. Supp. 2d at 519.

- 17 -

MEMORANDUM IN SUPPORT OF
CROSS-MOTION TO STAY

1    Moreover, the named plaintiffs in this action are members of the putative class of

2    Countrywide shareholders on whose behalf the Delaware plaintiffs have brought

3    suit.  Plaintiffs here will thus benefit from any injunctive relief or damages that

4    the Delaware courts may grant to the class, and they will be bound by the

5    Delaware courts' rulings.

6            *Fourth*, the Delaware courts acquired jurisdiction over claims related to

7    the merger before this Court did.  In Delaware, the first action related to the

8    Countrywide-Bank of America merger was filed on January 14, 2008.  Winawer

9    Decl. Ex. 3.  Plaintiffs in this action did not amend their pending derivative

10   complaint to assert putative class action claims related to the merger until more

11   than a month later, on February 15.

12           *Finally*, the Delaware actions are more advanced than this action.  The

13   Chancery Court has already entered an order appointing lead plaintiffs and lead

14   counsel, and the plaintiffs have filed a consolidated amended complaint.

15   Winawer Decl. Exs. 1, 4.  The parties have agreed upon a form of scheduling

16   stipulation and proposed order that provides for expedited discovery and

17   schedules a preliminary injunction hearing, all to conclude by May 20, 2008,

18   before the anticipated closing of the merger in the third quarter.  Winawer Decl.

19   Ex. 2.  Discovery is already underway.  Plaintiffs served discovery requests

20   shortly after their complaint in January, and defendants are due to begin

21   responding to those requests on March 3.  Winawer Decl. Exs. 2, 5.  As the Ninth

22   Circuit has held, it would be "highly inefficient" to now begin proceedings in

23   this Court in the face of parallel state-court litigation that is already proceeding

24   apace.  *Nakash*, 882 F.2d at 1415.[11]

25   ─────────────────────

26   [11]    Although some Ninth Circuit cases have considered avoidance of forum
     shopping as one of the *Colorado River* factors, the Supreme Court has never
27   explicitly adopted it.  *See Travelers Indem. Co.*, 914 F.2d at 1367-68; *Nakash*, 882
     F.2d at 1415-17.  In any event, that factor is satisfied here. Plaintiffs have sought
28   to avoid the Delaware forum, even though virtually identical merger-related

                                      - 18 -              MEMORANDUM IN SUPPORT OF
                                                          CROSS-MOTION TO STAY

1    In sum, each of the relevant *Colorado River* factors weighs in favor of

2  staying the merger-related claims in this action until the Delaware courts have

3  resolved them.[12]

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

────────────────────

21  claims were already pending in Delaware, even though one of the law firms
    representing plaintiffs in this action is a Delaware firm, and even though a long
22  line of cases has held that the appropriate forum for claims involving the internal
    affairs of a corporation is the corporation's state of incorporation. *See, e.g.*,
23  *Rogers*, 288 U.S. at 130; *Pennsylvania* v. *Williams*, 294 U.S. 176, 185 (1935).

24  [12]    As the Court is aware, four other cases challenging the merger were brought
25  in California Superior Court, and three of those cases are now pending before this
    Court:  *Adams* v. *Mozilo et al.*, No. CV-08-00236-MRP (MANx); *Snyder* v.
26  *Countrywide Financial Corp.*, No. CV-08-00285-MRP (MANx); and *Feder* v.
27  *Cunningham et al.*, No. CV-08-00287-MRP (MANx).  Defendants also intend to
28  move to stay those actions in favor of the litigation in Delaware.

- 19 -        MEMORANDUM IN SUPPORT OF
             CROSS-MOTION TO STAY

**CONCLUSION**

For the foregoing reasons, this Court should grant defendants' cross-motion for stay.  The Court should (1) enforce the PSLRA stay pending a decision on defendants' motion to dismiss, and (2) stay litigation of plaintiffs' newly added merger claims in favor of parallel merger litigation pending in the Delaware Court of Chancery.


Dated:    February 28, 2008

GOODWIN PROCTER LLP


By: _____
         Lloyd Winawer

OF COUNSEL

Eric M. Roth (Pro Hac Vice Pending)
EMRoth@wlrk.com
Stephen R. DiPrima (Pro Hac Vice Pending)
SRDiPrima@wlrk.com
Graham W. Meli (Pro Hac Vice Pending)
GWMeli@wlrk.com
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone:  (212) 403-1000
Facsimile:   (212) 403-2000

10250 Constellation Blvd., 21st Floor
Los Angeles, CA  90067
Telephone:  (310) 788-5177
Facsimile:   (310) 286-0992

Brian E. Pastuszenski (Pro Hac Vice)
Stuart M. Glass  (Pro Hac Vice)
53 State Street
Exchange Place
Boston, MA  02109
Telephone:  (617) 570-1000
Facsimile:   (617) 523-1231

*Attorneys for Defendants Angelo R. Mozilo, David J. Sambol, Jeffrey M. Cunningham, Robert J. Donato, Martin R. Melone, Robert T. Parry, Oscar P. Robertson, Keith P. Russell, Harley W. Snyder, Henry G. Cisneros, Stanford L. Kurland, Carlos M. Garcia, and Eric P. Sieracki, and Nominal Defendant Countrywide Financial Corp.*

- 20 -