1   Lloyd Winawer (State Bar No. 157823)
2   Email:  lwinawer@goodwinprocter.com
    GOODWIN PROCTER LLP
3   10250 Constellation Blvd., 21st Floor
    Los Angeles, California  90067
4   Tel.:  310-788-5177
    Fax:  310-523-1231
5
6   Brian E. Pastuszenski (*Admitted Pro Hac Vice*)
    Email:  bpastuszenski@goodwinprocter.com
7   Stuart M. Glass (*Admitted Pro Hac Vice*)
    Email:  sglass@goodwinprocter.com
8   GOODWIN PROCTER LLP
    53 Exchange Place
9   Boston, MA  02109
    Telephone:  617-570-1000
10  Facsimile:  617-523-1231
11
    *Attorneys for Defendants*
12  Countrywide Financial Corporation, Countrywide Home Loans, Inc.,
    Countrywide Capital V, Angelo R. Mozilo, David Sambol, Eric P. Sieracki,
13  Robert J. Donato, Harley W. Snyder, Jeffrey M. Cunningham,
    Martin R. Melone, Robert T. Parry, Oscar P. Robertson,
14  Keith P. Russell, Stanford L. Kurland, Andrew Gissenger,
15  Carlos M. Garcia, and Henry G. Cisneros

16  ADDITIONAL COUNSEL OF RECORD ON SIGNATURE PAGE

17          **UNITED STATES DISTRICT COURT**
18          **CENTRAL DISTRICT OF CALIFORNIA**
19

| 20 | IN RE COUNTRYWIDE FINANCIAL CORP. DERIVATIVE LITIGATION | Lead Case No. 07-CV-06923-MRP (MANx) |
| 21 | | |
| 22 | GEORGE PAPPAS, on behalf of himself and all others similarly situated, | Consol. Case No. CV-07-05295-MRP (MANx) |
| 23 | Plaintiff, | **DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTIONS TO STAY UNDER THE PSLRA, SLUSA, AND *COLORADO RIVER*** |
| 24 | vs. | |
| 25 | COUNTRYWIDE FINANCIAL CORP., ANGELO MOZILO and ERIC P. SIERACKI, | |
| 26 | | |
| 27 | Defendants. | |

28

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .......................................................................................ii

I.    INTRODUCTION ....................................................................................... 1

II.    ARGUMENT ............................................................................................... 5

    A.    The PSLRA Stay Should Be Enforced Pending a Decision on
          Defendants' Motion to Dismiss ........................................................... 5

        1.    The PSLRA stay applies to the Federal Plaintiffs' claims ......... 5

        2.    Plaintiffs cannot demonstrate "undue prejudice"
              warranting relief from the PSLRA discovery stay .................... 7

        3.    Plaintiffs' broad document requests are not
              "particularized discovery." ...................................................... 9

    B.    The Court Should Stay the *Garber* Plaintiffs' Discovery ................. 11

        1.    The allegations underlying this action and *Garber* nearly
              completely overlap.................................................................. 12

        2.    There is a serious risk that discovery from *Garber* would
              spill into this action............................................................... 14

            a.    The identity of parties and facts creates a likelihood
                  of spillover...................................................................... 14

            b.    A protective order cannot eliminate this spillover
                  risk .................................................................................. 16

            c.    SLUSA does not require Defendants to show
                  Plaintiffs' intent to circumvent the discovery stay......... 16

        3.    Allowing *Garber* discovery would unduly burden
              Defendants .............................................................................. 17

    C.    Plaintiffs' Class-Action Claims Challenging the Proposed
          Merger Should Be Stayed in Favor of the Parallel Delaware
          Case .................................................................................................. 18

        1.    *Colorado River* and its progeny authorize this Court to
              stay Plaintiffs' merger-related class-action claims.................. 19

        2.    The *Colorado River* balancing test favors a stay of
              Plaintiffs' merger-related class-action claims ......................... 22

III.    CONCLUSION .......................................................................................... 25

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Alabama By-Prods. Corp. v. Cede & Co.*,
  657 A.2d 254 (Del. 1995)..................................................................8

*In re Am. Funds Sec. Litig.*,
  493 F. Supp. 2d 1103 (C.D. Cal. 2007)......................................10, 11

*Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*,
  843 F.2d 1253 (9th Cir. 1988)..........................................................23

*Angell Invs. v. Purizer Corp.*,
  No. 01 C 6359, 2001 WL 1345996 (N.D. Ill. Oct. 31, 2001) ............17

*In re Cardinal Health, Inc. Sec. Litig.*,
  365 F. Supp. 2d 866 (S.D. Ohio 2005)....................................passim

*City of Austin v. ITT Educ. Svcs., Inc.*,
  Civ. A. No. 04–0380, 2005 WL 280345 (S.D. Ind. Feb. 2, 2005)....................17

*Colorado River Water Conservation District v. United States*,
  424 U.S. 800 96 S. Ct. 1236, 47 L.Ed.2d 483 (1976) ................passim

*In re Crompton Corp. Sec. Litig.*,
  Civ. A. No. 03-1293, 2005 WL 3797695 (D. Conn. July 22, 2005)..........passim

*Daugherty v. Oppenheimer & Co., Inc.*,
  Civ. A. No. 06–7725, 2007 WL 1994187 (N.D. Cal. Jul. 5, 2007) ..................20

*De Simas v. Big Lots Stores, Inc.*,
  2007 WL 686638 (N.D. Cal. Mar. 2, 2007) ......................................24

*Del Giudice v. S.A.C. Capital Mgmt., LLC*,
  Civ. A. No. 06–01413 (D.N.J. March 12, 2007)........................14, 16

*In re DPL Inc. Sec. Litig.*,
  247 F. Supp. 2d 946 (S.D. Ohio 2003)............................................13

*In re Dynegy, Inc. Sec. Litig.*,
  Civ. A. No. H0215171, 2003 WL 24133020 (S.D. Tex. May 28,
  2003)..................................................................................................16

*In re Enron Corp. Sec., Deriv. & ERISA Litig.*,
  2002 WL 31845114 (S.D. Tex. Aug. 16, 2002)................................11

*Evanston Ins. Co. v. Jimco, Inc.*,
  844 F.2d 1185 (5th Cir. 1988) ........................................................25

*In re Gilead Scis. Sec. Litig.*,
  Civ. A. No. 03–4999, 2004 WL 3712008 (N.D. Cal. Nov. 22, 2004) .........16, 17

*Gintz v. Jack in the Box, Inc.*,
  Civ. A. No. 06–02857, 2006 WL 3422222 (N.D. Cal. Nov. 28,
  2006)..................................................................................................20

*Green v. City of Tucson*,
  217 F.3d 1081 (9th Cir. 2000)..........................................................24

*Holder v. Holder*,
  305 F.3d 854 (9th Cir. 2002)....................................20, 21, 23, 25

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3   *Intel Corp. v. Advanced Micro Devices,*
    12 F.3d 908 (9th Cir. 1993) .................................................................. 21

4   *Iron Workers of W. Pa. Pension Plan v. Caremark Rx, Inc.,*
5       Civ. A. No. 3:06-1097, 2007 WL 60927 (M.D. Tenn. Jan. 5, 2007) ................ 19

6   *In re JDS Uniphase Corp. Sec. Litig.,*
    238 F. Supp. 2d 1127 (N.D. Cal. 2002) .................................................... 6

7   *La. Mun. Police Employees' Ret. Sys. v. Crawford,*
    918 A.2d 1172 (Del. Ch. 2007) ............................................................. 22

8   *Lapicola v. Alternative Dual Fuels, Inc.,*
    Civ. A. No. 02–0299, 2002 WL 531545 (N.D. Tex. Apr. 5, 2005) ............... 16

9   *Levy Investments v. James River Group, Inc.,*
10      No. 07–CVS–820, 2007 NCBC LEXIS 37 (N.C. Super. Ct. Sept.
        19, 2007) ........................................................................................ 24

11  *Lewis v. Anderson,*
    477 A.2d 1040 (Del. 1984) .................................................................... 8

12  *Medhekar v. U.S. Dist. Ct.,*
13      99 F.3d 325 (9th Cir. 1996) .................................................................. 6

    *Michelson v. Citicorp Nat'l Servs.,*
14      138 F.3d 508 (3d Cir. 1998) ................................................................. 20

15  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 103 S. Ct. 927, 74 L.Ed.2d 765 (1983) ................................... 20

16  *Nationwide Mut. Ins. Co. v. Darden,*
17      503 U.S. 318 112 S. Ct. 1344 117 L.Ed 2d 581 (1992) ............................. 6

    *Newby v. Enron Corp.,*
18      338 F.3d 467 (5th Cir. 2003) ....................................................... 13, 16, 17

19  *In re NextCard, Inc. Sec. Litig.,*
    No. C–01–21029, 2003 WL 23142199 (N.D. Cal. Sept. 17, 2003) ............... 11

20  *OSRecovery, Inc. v. One Groupe Int'l, Inc.,*
    305 F. Supp. 2d 340 (S.D.N.Y. 2004) ..................................................... 6

21  *In re Pac. Enters. Sec. Litig.,*
    47 F.3d 373 (9th Cir. 1995) ................................................................... 24

22  *Podany v. Robertson Stephens, Inc.,*
23      350 F. Supp. 2d 375 (S.D.N.Y. 2004) ..................................................... 17

    *Porter v. Texas Commerce Bancshares, Inc.,*
24      Civ. A. No. 9114, 1989 WL 120358 (Del. Ch. Oct. 12, 1989) ..................... 8

25  *In re Rambus, Inc. Sec. Litig.,*
    No. C 06–4346, 2007 WL 1430047 (N.D. Cal. May 14, 2007) ..................... 11

26  *Rampersad v. Deutsche Bank Sec., Inc.,*
    381 F. Supp. 2d 131 (S.D.N.Y. 2003) ..................................................... 11

27  *In re Refco, Inc.,*
28      No. 05-CIV-8626, 2006 WL 2337212 (S.D.N.Y. Aug. 6, 2006) ................... 11

- iii -

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3

*Romine v. Compuserve Corp.*,
   160 F.3d 337 (6th Cir. 1998) ............................................................. 24

*Ross v. U.S. Bank Nat'l Ass'n*,
   2008 WL 413740 (N.D. Cal. Feb. 13, 2008) ...................................... 20

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
   220 F.R.D. 246 (D. Md. 2004) ........................................................... 11

*Schwartz v. TXU Corp.*,
   Civ. A. No. 02–2243, 2004 WL 1732477 (N.D. Tex. July 30, 2004) ......... 13, 14

*In re Sea-Land Corp. S'holders Litig.*,
   642 A.2d 792 (Del. Ch. 1993) ............................................................. 9

*In re Talley Indus. S'holders Litig.*,
   No. Civ. 15961, 1998 Del. Ch. LEXIS 53 (Del. Ch. April 13, 1998) ................. 8

*Teamsters Local Nos. 175 & 505 Pension Trust Fund v. IBP, Inc.*,
   123 F. Supp. 2d 514 (D.S.D. 2000) .................................................... 19

*Thomas v. Acme Scientific Mold Polishing Serv. & Supply*,
   Civ. A. No. 93-5314, 1993 WL 469974 (N.D. Ill. Nov. 10, 1993) .................... 20

*Tobias Holdings, Inc. v. Bank United Corp.*,
   177 F. Supp. 2d 162 (S.D.N.Y. 2001) ................................................ 13

*In re Topps Co. S'holders Litig.*,
   924 A.2d 951 (Del. Ch. 2007) ........................................................... 22

*Travelers Indem. Co. v. Madonna*,
   914 F.2d 1364 (9th Cir. 1990) ........................................................... 25

*In re Vivendi Universal, S.A. Sec. Litig.*,
   381 F. Supp. 2d 129 (S.D.N.Y. 2003) ................................................ 11

*Zapata Corp*. v. *Maldonado*, 430 A.2d 779, 785 (Del. 1981) ................................. 9

**STATUTES**

15 U.S.C. § 78u-4(b)(3)(B) ................................................................ 5, 7, 9

**OTHER AUTHORITIES**

Del. Ch. R. 24 ................................................................................... 24

H.R. Rep. No. 105-640 (1998) ................................................................. 12

S. Rep. No. 104-98 (1995) ..................................................................... 6

DEFENDANTS' REPLY IN SUPPORT OF
STAY MOTIONS

**I.     INTRODUCTION**

Two important policy considerations support Defendants' stay motions.  First, courts discourage piecemeal litigation to prevent prejudice to the parties, promote judicial efficiency, avoid inconsistent rulings, and preserve scarce resources.  Second, federal securities law claimants should not have access to discovery unless and until the court determines that they have met strict federal pleading standards.  With those policies as a guide, Defendants ask this Court—as we have similarly asked Los Angeles Superior Court Judge Chaney—to help impose order on three overlapping lawsuits pending in different forums:

- the *Arkansas Teacher* case before this Court, which contains two sets of claims: (i) derivative claims brought on Countrywide's behalf against Countrywide's directors alleging that they artificially inflated the company's stock price from 2004 through January 2, 2008, and fraudulently sold their own shares at an unfair profit; and (ii) class claims challenging the terms of Countrywide's merger with Bank of America;

- the *Garber* action before the Los Angeles Superior Court, which contains the same two sets of claims and allegations; and

- the consolidated merger-related action before the Delaware Court of Chancery, which contains only the class action merger-related claims.

The PSLRA, SLUSA and the Supreme Court's *Colorado River* decision provide the tools to implement an efficient litigation framework that vindicates those overriding policies.  First, this Court should enforce the PSLRA's mandatory discovery stay in this action until it decides Defendants' motion to dismiss the derivative claims, thereby protecting Defendants from having to produce four years' worth of all-encompassing discovery without a judicial determination that plaintiffs have satisfied the PSLRA's strict pleading standards.

1   Second, in the event that Judge Chaney does not stay *Garber*, this Court should stay

2   discovery in that action under SLUSA to safeguard the federal court PSLRA

3   discovery stay.  Third, this Court should stay the merger-related class claims here

4   under *Colorado River,* in deference to the more advanced identical class action that

5   is proceeding expeditiously in Delaware, Countrywide's state of incorporation.

6          Not surprisingly, neither the Plaintiffs here (the "Federal Plaintiffs")

7   nor those in the state-court action (the "*Garber* Plaintiffs") are interested in an

8   orderly litigation process, consistent with the federal securities laws.  Far from it.

9   The Federal Plaintiffs implore the Court to grant them *expedited* discovery in the

10  hope of obtaining support for their preliminary injunction motion.  And the *Garber*

11  Plaintiffs (who purport to represent the exact same interests) demand that this Court

12  allow similar expedited discovery to proceed in Los Angeles Superior Court, as

13  they set their sights on a June 9 "trial" on the derivative claims.  They each try to

14  satisfy the PSLRA discovery stay's "undue prejudice" exception by arguing that

15  Countrywide's pending merger with Bank of America would "extinguish" or "wipe

16  out" the Defendants' potential liability on the derivative claims.

17         But as Defendants demonstrated in opposing the Federal Plaintiffs'

18  preliminary injunction motion, Delaware law squarely refutes that prejudice

19  argument for two reasons.  First, the derivative claims—which belong to

20  Countrywide, not to the Plaintiffs—would not "disappear."  Rather, they would

21  pass to BofA in the merger, along with the rest of Countrywide's assets.  All that

22  would "disappear" is the standing of these Plaintiffs to sue derivatively on

23  Countrywide's behalf.  But if qualified post-merger BofA shareholders wish to

24  have the surviving BofA subsidiary press the derivative claims, Delaware law

25  provides procedures for serving a demand on BofA's board, which it would be

26  obligated to consider in good faith.  In all events, Countrywide's directors would

27  remain potentially liable to Countrywide's successor following the merger—the

28  same position they occupy now.  Second, the merger agreement's indemnification

DEFENDANTS' REPLY IN SUPPORT OF
STAY MOTIONS

1   provisions do not protect Countrywide's directors from potential derivative

2   liability.  BofA has only agreed to continue the indemnification rights that those

3   directors already have.  Both Delaware law and Countrywide's by-laws (the

4   obligations of which BofA will inherit in the merger) prohibit BofA from

5   indemnifying Countrywide's directors for a derivative-action judgment or any

6   judgment based on a finding of bad faith.  Thus, enforcing the PSLRA and SLUSA

7   stays—at the expense of Plaintiffs' proposed "constructive trust"—would not result

8   in *any* prejudice, much less the "undue prejudice" that the PSLRA requires.

9            The Federal Plaintiffs' other arguments against enforcing the PSLRA

10   stay also fail.  *First*, they argue that the stay does not apply to preliminary

11   injunction proceedings.  That argument is refuted by the statute's plain language

12   that automatically stays "all discovery *and other proceedings*."  Plaintiffs'

13   preliminary injunction motion is obviously inextricably linked to their expedited

14   discovery motion.  *Second*, Plaintiffs argue that their derivative claims should not

15   be treated like securities claims.  But consistent with the PSLRA's express

16   application to "any private action," courts routinely stay derivative claims that

17   allege securities fraud.  *Third*, Plaintiffs argue that the discovery they seek is

18   "limited."  But that discovery would probe virtually every aspect of Countrywide's

19   financial operations since 2004.  It thus goes to the heart of the very federal

20   securities claims to which the PSLRA's mandatory discovery stay explicitly

21   applies.  *Fourth*, Plaintiffs rely on a non-existent risk of document destruction.

22   Countrywide has had a litigation hold in place since before these actions were filed,

23   and will continue to retain documents as is its obligation.  Plaintiffs cannot identify

24   any reason to suspect that evidence would *ever* be lost or destroyed, let alone in the

25   time that the parties will litigate a motion to dismiss.

26            This Court should similarly stay discovery by the *Garber* Plaintiffs

27   under the PSLRA's state-court arm, SLUSA (unless Judge Chaney stays *Garber* on

28   March 17).  SLUSA allows federal courts to stay state-court discovery where such

DEFENDANTS' REPLY IN SUPPORT OF
STAY MOTIONS

1   discovery would likely spill over into the stayed federal securities action.  This case

2   involves a high spillover risk for at least three reasons.  *First*, the *Garber* Plaintiffs

3   and the Federal Plaintiffs seek to represent the exact same interests, with near-

4   complete factual and legal overlap between their respective claims.  Thus, the

5   discovery spillover risk is inherent.  *Second*, the schedule in the state court action

6   provides for an open-court "trial" or "injunction hearing" on June 9.  With this

7   court only hearing the dismissal motions on April 28, the likelihood is that the June

8   9 Superior Court proceeding would nullify the PSLRA discovery stay before this

9   Court has had the opportunity to decide those motions.  *Third*, courts have

10  recognized the increased risk—even with a confidentiality order—that state court

11  discovery would be publicly disclosed in cases like this that are under intense media

12  scrutiny.

13          In addition to enforcing the PSLRA and SLUSA stays pending the

14  motions to dismiss the derivative claims, this Court should invoke the authority of

15  *Colorado River* and defer to the Delaware Chancery Court on the class action

16  merger claims.  A month before the Federal Plaintiffs amended their derivative

17  complaint to inject class-action claims challenging the merger, another

18  Countrywide shareholder had already filed claims on behalf of the same putative

19  class in Delaware, the courts of which routinely adjudicate merger-related claims

20  involving Delaware corporations.  The Delaware Chancery Court has since (i)

21  consolidated the three related actions before it, (ii) appointed a lead plaintiff, (iii)

22  ordered the filing of a consolidated amended complaint (which has since

23  happened), and (iv) set a schedule that provides for document production (which

24  has already begun), fact-witness depositions, expert discovery, briefing, and a

25  preliminary-injunction hearing by May 20, 2008—before the Countrywide

26  shareholders vote on the merger.  This parallel Delaware litigation adequately

27  protects Plaintiffs' and the other Countrywide shareholders' interests.  In fact,

28  allowing Plaintiffs' merger-related claims to proceed here on an expedited basis

DEFENDANTS' REPLY IN SUPPORT OF
                                        STAY MOTIONS

1  would present a greater threat—burdensome and duplicative litigation, and a risk of
2  inconsistent judgments.

3        Contrary to Plaintiffs' argument, *Colorado River* and its progeny allow
4  a federal court to stay part of a case, while the remaining federal claims continue.
5  In fact, courts in this and other jurisdictions have done just that.  This case is
6  particularly suited to such relief, because it is actually two cases:  (i) a derivative
7  case brought on the company's behalf, with federal securities law allegations
8  spanning a four-year period; and (ii) a later-filed class action brought on behalf of
9  shareholders challenging the propriety of a merger, with allegations spanning a
10  several-month period covering the negotiations for the January 11, 2008 merger
11  agreement.  The Delaware action can completely resolve the latter case, while this
12  Court handles the former, consistent with the PSLRA.  And it is appropriate for this
13  Court to defer to the Delaware Chancery Court on the class action merger claims,
14  not only because that court is well on its way to a timely decision, but also because
15  merger-related claims involving Delaware companies are its bread-and-butter.

16  **II.  ARGUMENT**

17      **A.  The PSLRA Stay Should Be Enforced Pending a Decision on
18          Defendants' Motion to Dismiss.**

19          **1.  The PSLRA stay applies to the Federal Plaintiffs' claims.**

20        In cases like this one involving federal securities claims, the PSLRA
21  mandates that "*all discovery and other proceedings shall be stayed* during the
22  pendency of any motion to dismiss."  15 U.S.C. § 78u-4(b)(3)(B) (emphasis added).
23  The stay of "discovery" inarguably applies to the Federal Plaintiffs' expedited-
24  discovery motion.  And the stay of "other proceedings" easily fits their preliminary
25  injunction motion.  As Defendants noted in their moving papers, the Supreme Court
26  has long referred to a preliminary-injunction hearing as a "proceeding."[1]

27

28      [1]    Countrywide Defendants' Mem. in Support of Cross-Motion to Stay at 8–9.

DEFENDANTS' REPLY IN SUPPORT OF
STAY MOTIONS

Plaintiffs disparage these cases by arguing that none of them "actually holds" that a preliminary injunction hearing is a "proceeding." (Plaintiffs' Mem. in Opposition to Motion to Stay ("Pls. Opp. Br.") at 10 n.4.) But the manner in which the Supreme Court and other federal courts use a litigation term is persuasive in construing statutory language invoking that same term. *See, e.g.*, *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322, 112 S. Ct. 1344, 1348, 117 L.Ed 2d 581, 589 (1992) (noting the "well established" principle that when "Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the well established meaning of these terms.") (internal quotations and citations omitted). And the Federal Plaintiffs fail to cite any case that has interpreted the unambiguous PSLRA stay language any differently. Neither case they cite has anything to do with discovery, and one does not even cite the PSLRA at all. *See In re JDS Uniphase Corp. Sec. Litig.*, 238 F. Supp. 2d 1127, 1132–34 (N.D. Cal. 2002) (permitting discussions with party's former employees without violating confidentiality agreements); *OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 305 F. Supp. 2d 340, 347-48 (S.D.N.Y. 2004) (no PSLRA discussion).

The result is the same under the Ninth Circuit's articulation of "other proceedings," which includes "litigation activity relating to discovery." *See Medhekar v. U.S. Dist. Ct.*, 99 F.3d 325, 328 (9th Cir. 1996) (enforcing PSLRA stay to prevent Rule 26(a)(1) initial disclosures). The Federal Plaintiffs are seeking expedited *discovery* for a preliminary injunction hearing—an *evidentiary* proceeding on Plaintiffs' securities claims that will occur long before the Court can decide a motion to dismiss. This type of "litigation activity relating to discovery" is precisely what the PSLRA was enacted to prevent. *See* S. Rep. No. 104-98, at 14 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 693 (imposing stay to prevent burdensome litigation before "the court has sustained the legal sufficiency of the complaint").

DEFENDANTS' REPLY IN SUPPORT OF
STAY MOTIONS

There is also no principled basis to treat derivative actions that assert federal securities claims differently from securities actions generally. Here too, the statute's plain language shows the way—it expressly applies to "*any* private action." 15 U.S.C. § 78u-4(b)(3)(B) (emphasis added). And as Defendants pointed out in their opening brief, numerous courts in this Circuit and elsewhere have applied this language to stay "discovery and other proceedings" in derivative actions that contain Exchange Act claims.[2]

### 2. Plaintiffs cannot demonstrate "undue prejudice" warranting relief from the PSLRA discovery stay.

Because the PSLRA stay applies, the Federal Plaintiffs' motions cannot proceed unless they fall within the statute's narrow exception for "particularized discovery" only when necessary "to prevent undue prejudice." 15 U.S.C. § 78u-4(b)(3)(B) (emphasis added). The only potential "prejudice" to which the Federal Plaintiffs or *Garber* Plaintiffs cite—indeed, the sole basis for their merger-related claims—is that the Countrywide directors will "escape liability" on the derivative claims. But the proposed merger poses no such risk, because it would not affect the directors' potential liability. As BofA demonstrated in its opposition to the Federal Plaintiffs' preliminary-injunction motion, the derivative claims belong to *Countrywide*, not its shareholders, and the merger would merely transfer those claims to the surviving BofA subsidiary, which would be fe to pursue them.[3] The proposed merger would thus affect only the Federal Plaintiffs' *standing* (as Countrywide shareholders), not the directors' potential liability or, more importantly, the company's ability to recover from them.

The Federal Plaintiffs themselves admit as much. While they maintain that they seek a "constructive trust for the benefit of Countrywide's shareholders," they concede elsewhere that they are attempting to recover for harm to "the

---

[2] Countrywide Defendants' Mem. in Support of Cross-Motion to Stay at 7.

[3] *See* BofA's Opp. to Pls' Mot. for a Prelim. Inj. & Constructive Trust at 2-6.

DEFENDANTS' REPLY IN SUPPORT OF STAY MOTIONS

Company" itself.  (Pls.' Opp. Br. at 4, 7, 8, 12.)  That, of course, is the nature of a derivative action.  *See Alabama By-Prods. Corp. v. Cede & Co.*, 657 A.2d 254, 264-65 (Del. 1995) ("[A]ny damages recovered in the derivative suit inure directly to the corporation.").  It is for this reason that Delaware courts routinely reject claims that are based on directors allegedly trying to insulate themselves from liability through a merger.[4]

For the same reason, the drastic remedy that the Federal Plaintiffs seek hardly "maintain[s] the status quo."  (Pls.' Opp. Br. at 11.)  If anything, an injunction or constructive trust would disrupt the status quo by stripping Countrywide of its claims, stripping BofA of its succession rights on those claims, and pre-judging BofA's decision on whether to pursue them after the merger.  Conversely, the injunction's *denial* would preserve the status quo by allowing the claims and any potential recovery to remain with Countrywide or its successor.

The merger agreement's plain language refutes the Federal Plaintiffs' related theory—that BofA's obligation in the merger agreement to indemnify Countrywide's directors eliminates its incentive to pursue the derivative claims after the merger.  (Pls.' Opp. Br. at 2.)  Plaintiffs ignore that BofA's obligation extends *only* to the directors' *existing* indemnification rights.  Countrywide's own bylaws *already* entitle the directors to indemnification to the fullest extent Delaware law allows, including for expenses in defending "suit[s] brought by or in the right of the Corporation," *i.e.*, derivative actions.[5]  And what Delaware does not allow—and

---

[4]  *See, e.g., Lewis v. Anderson*, 477 A.2d 1040, 1049–50 (Del. 1984) (rejecting argument that plaintiff's loss of standing would allow officers and directors to "escape accountability"); *In re Talley Indus. S'holders Litig.*, No. Civ. 15961, 1998 Del. Ch. LEXIS 53, at *32 n.4 (Del. Ch. April 13, 1998) ("The assertion that the board improperly sought a sale of the company . . . because of its desire to obtain an indemnification provision . . . is particularly jejune."); *Porter v. Texas Commerce Bancshares, Inc.*, Civ. A. No. 9114, 1989 WL 120358, at *3, 5 (Del. Ch. Oct. 12, 1989) (rejecting argument that directors approved merger "to protect themselves against derivative litigation").

[5]  *See* BofA's Opp. to Pls' Mot. for a Prelim. Inj. & Constructive Trust at 3-4.

DEFENDANTS' REPLY IN SUPPORT OF STAY MOTIONS

thus what Countrywide's bylaws, by definition, do not indemnify—is liability for derivative judgments or any judgment based on bad-faith conduct.[6]  Thus, the merger agreement's continuation of Countrywide's indemnification provisions is irrelevant.[7]

In the event that BofA declines to pursue the derivative claims after the merger, Delaware law would still provide a process for a potential shareholder remedy.  For example, because Countrywide's shareholders would become Bank of America shareholders through the merger, they could make a demand on BofA's board of directors to cause the surviving merger subsidiary to pursue the derivative claims.  BofA's board would be obligated to consider that demand in good faith. *See generally Zapata Corp. v. Maldonado*, 430 A.2d 779, 783–87 (Del. 1981). Thus, Plaintiffs' lone basis for invoking the PSLRA stay's "undue prejudice" exception—that the Countrywide directors' potential derivative liability will "disappear" in the merger—has no substance.

### 3.   Plaintiffs' broad document requests are not "particularized discovery."

The Federal Plaintiffs' request for PSLRA stay relief also fails for a separate reason.  Even if they had demonstrated "undue prejudice," their all-encompassing document demands would hardly qualify as "particularized."  *See* 15 U.S.C. § 78u-4(b)(3)(B).  A more apt description would be "blunderbuss."  The requests sweep in *all* documents prepared since *January 1, 2004* "describing, discussing, evidencing, reflecting, constituting, or forming the basis of" *any* meeting of Countrywide's board or senior management involving Countrywide's "lending business," "accounting policies and methods," "credit risk assessment and

---

[6]     *See id.*

[7]     *See id.* at 4.  *See also In re Sea-Land Corp. S'holders Litig.,* 642 A.2d 792, 804 (Del. Ch. 1993) ("[I]ndemnification has become commonplace in corporate affairs . . . and [. . .] does not increase a director's wealth").

DEFENDANTS' REPLY IN SUPPORT OF STAY MOTIONS

management," or "hedging activities"—i.e., any aspect of Countrywide's operations for a four-year period.[8]  This is 180 degrees from the "particularized" discovery that the PSLRA stay's limited exception envisions.  *See, e.g.*, *In re Am. Funds Sec. Litig.*, 493 F. Supp. 2d 1103, 1107 (C.D. Cal. 2007) (holding "particularized discovery" limited to specifically identified documents).

Plaintiffs argue "no harm, no foul," because the Defendants are already producing discovery in the Delaware class action merger litigation.  This argument fails for two reasons.  *First*, the discovery the Federal Plaintiffs seek is far broader than the merger-related requests in the Delaware action.  The latter probe only the merger negotiations and proposed consideration, including whether Countrywide's shareholders have received full and accurate disclosure so that they can decide for themselves whether the merger is in their interests.  Delaware Plaintiffs seek, for example, documents relating to "any negotiations, discussions, meetings or communications…regarding the Proposed Acquisition"; "all drafts of the Merger Agreement"; and any "evaluation, analysis or review of…the consideration to be offered to Countrywide's public shareholders."[9]  Here, in contrast, the Federal Plaintiffs demand documents that go directly to the securities claims' merits:

- "*All* documents concerning Countrywide Senior Management and Director Rule 10b5-1 plans";[10]

- "*All* documents produced . . . in *any* investigations, hearings, or probes, (both formal or informal and both official and

---

[8]     *See generally* Declaration of Blair A. Nicholas in Support of Plaintiffs' Mot. for Expedited Discovery (filed Feb. 15, 2008) ("Nicholas Dec.") Ex. B.

[9]     Pls.' First Req. for Prod. of Doc. Directed to All Defs., Nos. 4–6 & 14, *In re Countrywide Corp. S'holder Litig.*, Civ. A. No. 3464 (Del. Ch. Jan. 22, 2008) (attached as Exhibit 5 to the Declaration of  Lloyd Winawer in Support of Countrywide Defendants Motion to Stay (filed February 28, 2008) ("Winawer Stay Dec.")).

[10]    Nicholas Dec. Ex. B (Doc. Req. No. 5 (emphasis added)).

DEFENDANTS' REPLY IN SUPPORT OF STAY MOTIONS

unofficial)…concerning…Countrywide Senior Management and Director (i) compensation; (ii) *securities transactions*; or (iii) *10b5-1 plans*";[11] and

- "*All* documents produced…in *any* litigation pending or completed against Countrywide and/or its Senior Management and/or Directors alleging…*securities…violations*."[12]

*Second*, courts have repeatedly held that the PSLRA stay requires plaintiffs to prove undue prejudice even when third-parties have already received a defendant's documents.[13]  And courts within the Ninth Circuit have criticized cases that hold otherwise, including those that Plaintiffs cite.[14]

## B.    The Court Should Stay the *Garber* Plaintiffs' Discovery.

Merely enforcing the PSLRA's automatic discovery stay would not ensure its effectiveness, however, if Judge Chaney does not stay *Garber*.  In that event (i) Defendants would still be burdened with derivative-action discovery before this Court decides whether the derivative claims have been adequately pleaded; (ii) there would be a serious risk of inconsistent adjudications; and (iii) there would be a substantial risk that discovery in *Garber* would spill into this

---

[11]    *Id.* (Doc. Req. No. 2 (emphasis added)).

[12]    *Id.* (Doc. Req. No. 1 (emphasis added)).

[13]    *See, e.g.*, *In re Am. Funds*, 493 F. Supp. 2d at 1106; *In re Refco, Inc.*, No. 05-CIV-8626, 2006 WL 2337212, at *2–3 (S.D.N.Y. Aug. 6, 2006); *Rampersad v. Deutsche Bank Sec., Inc.*, 381 F. Supp. 2d 131, 133–34 (S.D.N.Y. 2003); *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 129, 130–31 (S.D.N.Y. 2003).

[14]    *See, e.g.*, *In re Rambus, Inc. Sec. Litig.*, No. C 06–4346, 2007 WL 1430047, at *2 (N.D. Cal. May 14, 2007) (refusing to apply *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 2002 WL 31845114 (S.D. Tex. Aug. 16, 2002), which Plaintiffs cite here, because it "appear[s] to be contrary to . . . Ninth Circuit authority"); *In re NextCard, Inc. Sec. Litig.*, No. C–01–21029, 2003 WL 23142199, at *3 (N.D. Cal. Sept. 17, 2003) (same); *In re Am. Funds*, 493 F. Supp. 2d at 1106 (refusing to apply *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246 (D. Md. 2004), which Plaintiffs cite here, because it involved unique risk "that key documents could be lost").

- 11 -

DEFENDANTS' REPLY IN SUPPORT OF STAY MOTIONS

Court.  Because discovery in *Garber* threatens to undermine the PSLRA's protections, SLUSA provides this Court with the power to stay it.  Indeed, Congress intended courts to use this power "liberally" "to prevent plaintiffs from circumventing the stay of discovery under the [PSLRA] by using State court discovery, which may not be subject to those limitations, in an action filed in State court."  H.R. Rep. No. 105-640, at 17-18 (1998).  Thus, unless Judge Chaney stays *Garber* on March 17, this Court should impose a SLUSA stay to prevent the Plaintiffs from circumventing the PSLRA.

### 1.     The allegations underlying this action and *Garber* nearly completely overlap.

The *Garber* Plaintiffs concede that their complaint substantially overlaps the Complaint here.  The beneficial plaintiff (Countrywide) and the defendants are identical, as are the key factual allegations (unsound lending practices, misleading statements to inflate artificially Countrywide's stock price, and insider trading), and relief sought (disgorgement and restitution of the Countrywide defendants' stock-sale proceeds and compensation).[15]  It thus comes as no surprise that the *Garber* Plaintiffs demand discovery of the very securities allegations that are subject to the PSLRA's discovery stay.  For example, they request[16] *all* documents "in any way logically or factually connected with":

- "(a) Countrywide's policies . . . regarding the *purchase or sale of its securities by any [Countrywide] employee, officer, director . . . and (b)* compliance (or non-compliance) with those policies";

---

[15]     Specially Appearing Plaintiffs' Opp. to Defendants' Mem. in Support of Mot. to Stay Discovery in *In re Countrywide Fin. Corp. S'holder Deriv. Litig.*, Case No. BC375275 (Cal. Super. Ct.) ("SLUSA Opp. Br.") at 9-11.

[16]     *See* Pls.' First Consolidated Doc. Req. for Produc. of Doc. ("*Garber* Doc. Req.") Def. No. 7 & Req. Nos. 1, 10 & 11 (emphasis added), *In re Countrywide Fin. Corp. S'holder Deriv. Litig.*, Case No. BC375275 (Cal. Sup. Ct.)  (attached as Exhibit 1 to the Declaration of David Hurwitz in Further Support of Defendants' Motions to Stay ("Hurwitz Reply Dec.")).

DEFENDANTS' REPLY IN SUPPORT OF STAY MOTIONS

1    • "the purchase [or] sale . . . by . . . Defendants concerning

2         Countrywide securities"; and

3    • "Defendants' *compensation* . . . [and] *stock option plans* . . .

4         without regard to the 'Time Period' limitation . . . ."

5    This alone strongly supports a SLUSA stay.[17]

6         It is irrelevant that *Garber* involves only state-law claims.  In *Newby v.*

7    *Enron Corp.*, the Fifth Circuit found that Congress did not intend to restrict

8    SLUSA's power to enforce the PSLRA, and accordingly applied SLUSA to stay

9    "discovery in *any* private, *class or nonclass*, action in state court."  338 F.3d 467,

10   472–73 (5th Cir. 2003).  Indeed, courts routinely stay state-court discovery in

11   support of derivative state-law claims like those here.[18]

12        The *Garber* Plaintiffs cite *Tobias Holdings, Inc. v. Bank United Corp.*,

13   177 F. Supp. 2d 162 (S.D.N.Y. 2001), in arguing that a SLUSA stay of state-law

14   claims requires a "higher showing."  But *Tobias Holdings* says nothing about a

15   "higher showing" and did not even involve SLUSA.  Rather, the court considered

16   the PSLRA stay's application to state-law contract claims in the same federal

17   complaint as the federal securities-fraud claim.  The court's finding that the PSLRA

18   stay did not apply rested on its conclusion that the contract claims were "separate

19   and distinct" from the securities claims.  The court contrasted those "distinct"

20   contract claims with a situation like that here—a complaint "asserting federal and

21   state law insider trading claims against various defendants"—in which case the stay

22   would apply to the state-law claims.  *Id.* at 167–68.

23

24   _____

     [17]    *See, e.g.*, *In re Crompton Corp. Sec. Litig.*, Civ. A. No. 03–1293, 2005 WL

25   3797695, at *2 (D. Conn. July 22, 2005) ); *In re Cardinal Health, Inc. Sec. Litig.*,
     365 F. Supp. 2d 866, 876 (S.D. Ohio 2005); *Schwartz v. TXU Corp.*, Civ. A. No.

26   02–2243, 2004 WL 1732477, at *2 (N.D. Tex. July 30, 2004); *In re DPL Inc. Sec.*
     *Litig.*, 247 F. Supp. 2d 946, 946–48 (S.D. Ohio 2003).

27   [18]    *See, e.g.*, *DPL*, 247 F. Supp. 2d at 948; *Cardinal Health*, 365 F. Supp. 2d at

28   873-74; *Crompton*, 2005 WL 3797695, at *2, 4.

- 13 -

## 2. There is a serious risk that discovery from *Garber* would spill into this action.

### a. *The identity of parties and facts creates a likelihood of spillover.*

The identity of the Federal and *Garber* Plaintiffs creates a likelihood that *Garber* discovery will find its way into this action. The Federal Plaintiffs purport to represent (i) Countrywide, derivatively; and (ii) a class of Countrywide shareholders. (Compl. ¶¶ 387–93.) The *Garber* Plaintiffs are seeking to represent exactly the same interests.[19] This establishes a likelihood that the Federal Plaintiffs would obtain *Garber* discovery. *See Crompton*, 2005 WL 3797695, at *3 (finding that a state-court derivative plaintiff "is a putative class member in the federal action, and her receipt of discovery . . . violates the PSLRA"); *Schwartz*, 2004 WL 1732477, at *2 (staying discovery where state-court plaintiff was one or more of the very same shareholders that comprised the class in the federal case); *see also Del Giudice v. S.A.C. Capital Mgmt., LLC*, Civ. A. No. 06–01413, slip op. at 44 (D.N.J. March 12, 2007) (Hurwitz Reply Dec. Ex. 2) (staying state-court discovery under SLUSA because of "congruence of interests between counsel and the parties" in the state-court and federal securities actions). The court in *Crompton* was so concerned about this risk that it went so far as to order the state-court plaintiffs to *return* discovery they *had already obtained*. *In re Crompton Corp. Sec. Litig.*, Civ. A. No. 03–1293, slip op. at 4 (D. Conn. Aug. 16, 2005) ("By refusing to return discovery produced to date, Plaintiff violates the letter and the spirit of the PSLRA and SLUSA.") (Hurwitz Reply Dec. Ex. 3).

But there is even more here than identical plaintiffs and claims. Judge Chaney has scheduled a "trial" or "injunction hearing"[20] on the derivative claims

---

[19]    *Garber* Compl. ¶¶ 1–2 (attached as Exhibit A to the Declaration of Lloyd Winawer in Support of Defendants' Motion to Stay Discovery in *In re Countrywide Fin. Corp. S'holder Deriv. Litig.*, Case No. BC375275 (Cal. Super. Ct.) (filed February 29, 2008).

[20]    Transcript at 11:19, 12:6, 94:6–7, *In re Countrywide Fin. Corp. S'holder Deriv. Litig.*, Case No. BC375275 (Cal. Super. Ct. Feb. 28, 2008) (attached as

1   for June 9, 2008.  Between now and then, there are likely to be significant public

2   hearings (including on discovery matters) that might reveal *Garber* discovery.  And

3   of course, any discovery that wasn't disclosed before June 9 would likely be aired

4   at that time in open court.  The court in *Cardinal Health* found a SLUSA stay

5   warranted in similar circumstances:

6           Due to the advanced nature of the state court suit, as trial

7           has been set for September 26, 2005 [*i.e.*, six months from

8           the decision date], discovery hearings, discovery orders,

9           and perhaps a public trial are likely.  The result,

10          intentional or not, will be to circumvent the PSLRA's stay

11          provision.

12  365 F. Supp. 2d at 875.

13          The spillover risk is also heightened here because of the intense public

14  scrutiny in the media.  Since August 2007, thousands of news articles have been

15  published about Countrywide's business and financial troubles, which are at the

16  center of the derivative securities claims.  As one court observed, the spillover risk

17  becomes "insurmountable" in cases like this:

18          [D]iscovery in the state court, even if covered by

19          protective orders, will at least potentially become matters

20          of public record and, indeed, of public scrutiny in the

21          media, thereby presenting virtually insurmountable issues

22          in terms of this Court's ability to sort out what

23          information was derived from that lawsuit and what was

24          not, thereby potentially creating a scenario in which the

25          PSLRA stay and its purpose to prevent the use of

26  _____

27  Exhibit A to the Declaration of Arshan Amiri in Support of Pls.' Opp. to Mot. to
    Stay Discovery in *In re Countrywide Fin. Corp. S'holder Deriv. Litig.*, Case No.
28  BC375275 (Cal. Super. Ct.)).

DEFENDANTS' REPLY IN SUPPORT OF
                                    STAY MOTIONS

1     discovery in state court proceedings to bolster a federal

2     lawsuit while a motion to dismiss is pending would be

3     undermined.

4 *Del Giudice*, slip op. at 44.

5     b. *A protective order cannot eliminate this spillover risk.*

6     Contrary to Plaintiffs' urgings, a "confidentiality agreement" in

7 *Garber* would be no panacea.[21]  Numerous courts have concluded that a

8 confidentiality agreement offers cold comfort because it cannot prevent leaks into

9 the public domain during a hearing or other proceedings.[22]  In *Cardinal Health*, for

10 example, the court rejected the confidentiality-agreement argument where the state

11 action had an upcoming trial date, as *Garber* does here.  365 F. Supp. 2d at 875

12 ("[T]his Court remains concerned that some form of discovery, whether it be a state

13 court order resolving a discovery dispute or a public hearing, will reach Plaintiffs

14 before this Court has decided any dismissal motion.").  And the *Garber* Plaintiffs'

15 cases are readily distinguishable.  In two of them, the courts did not consider

16 whether the state and federal plaintiffs were representing the same real party-in-

17 interest, as they are here and were in *Crompton*.  *See In re Gilead Scis. Sec. Litig.*,

18 Civ. A. No. 03–4999, 2004 WL 3712008 (N.D. Cal. Nov. 22, 2004); *In re Dynegy,*

19 *Inc. Sec. Litig.*, Civ. A. No. H0215171, 2003 WL 24133020 (S.D. Tex. May 28,

20 2003).  The third, *Lapicola v. Alternative Dual Fuels, Inc.*, Civ. A. No. 02–0299,

21 2002 WL 531545 (N.D. Tex. Apr. 5, 2005), is no longer good law, having been

22 "specifically reject[ed] as unpersuasive" by the Fifth Circuit.  *Newby*, 338 F.3d at

23 473 n.3.

24

25 [21] SLUSA Opp. Br. at 8.

26 [22] *See, e.g.*, *Del Giudice*, slip op. at 44; *Crompton*, 2005 WL 3797695, at *2, 4 (ordering SLUSA stay even though state-court plaintiffs' counsel offered to execute a confidentiality agreement that barred sharing with federal court plaintiffs);

27 *Cardinal Health*, 365 F. Supp. 2d at 874 & n.11 (ordering SLUSA stay even though

28 state court plaintiffs had executed a confidentiality agreement).

DEFENDANTS' REPLY IN SUPPORT OF
STAY MOTIONS

c.  *SLUSA does not require Defendants to show Plaintiffs'
intent to circumvent the discovery stay.*

Plaintiffs are also wrong in asserting (without authority) that
Defendants must show that the *Garber* Plaintiffs *intend* to circumvent the PSLRA's
automatic stay.  (*See* SLUSA Opp. Br. at 5–6.)  While certainly a state court
plaintiff's intent to circumvent the PSLRA "would weigh heavily in favor of a stay
under SLUSA," *City of Austin v. ITT Educ. Svcs., Inc.*, Civ. A. No. 04–0380, 2005
WL 280345, at *10 (S.D. Ind. Feb. 2, 2005), intent is not a SLUSA stay
prerequisite.  The *Garber* Plaintiffs' own authority, *In re Gilead Sciences Securities
Litigation*, establishes this point:  "Nowhere does the statute imply, let alone
explicitly state, that Defendants must show that State Plaintiffs filed the state action
with the intent to circumvent the PSLRA."  2004 WL 3712008, at *2.  As another
court has reasoned, "had Congress desired to require a showing of an intent to
circumvent the PSLRA, it could have incorporated language to that effect."
*Cardinal Health*, 365 F. Supp. 2d at 873.  Congress did not.

### 3.  Allowing *Garber* discovery would unduly burden Defendants.

The thrust of both SLUSA and the PSLRA is a "strong presumption
that *no* discovery should take place until a court has affirmatively decided that a
complaint *does* state a claim under the securities laws."  *Podany v. Robertson
Stephens, Inc.*, 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004) (citing S. Rep. 104-98, at
14 (1995)).[23]  Thus, the amount of time Defendants have had to prepare for
production is irrelevant:  merely having to provide discovery that is subject to the
PSLRA's automatic stay is in itself unduly burdensome and supports a SLUSA
stay.  *Crompton*, 2005 WL 3797695, at *3 ("Defendants would be extremely
burdened if they had to produce virtually the same discovery that has been stayed

---

[23]  *Accord Newby*, 338 F.3d at 471; *Angell Invs. v. Purizer Corp.*, No. 01 C
6359, 2001 WL 1345996, at *2 (N.D. Ill. Oct. 31, 2001)).

- 17 -

1    pending this Court's resolution of the motion to dismiss in this action prior to this

2    Court's decision on that motion."). The *Garber* Plaintiffs do not contest this

3    fundamental point.

4            They also do not meaningfully address the other onerous burden on

5    Defendants, the risk of inconsistent adjudications.[24]  Plaintiffs argue that Judge

6    Chaney has "acknowledged" that coordinated proceedings may be "possible,"[25] but

7    Defendants respectfully submit that this would not resolve the problem.  To the

8    contrary, "coordinating," *i.e.*, *sharing*, discovery between the *Garber* Plaintiffs and

9    Federal Plaintiffs is precisely what Congress enacted SLUSA to prevent.

10    **C.**    **Plaintiffs' Class-Action Claims Challenging the Proposed Merger**

11          **Should Be Stayed in Favor of the Parallel Delaware Case.**

12            While this Court can employ the PSLRA and SLUSA (if necessary) to

13    bring order to the parallel federal and state derivative litigation, those statutes do

14    not address the perils posed by Countrywide shareholders' merger-related class-

15    action claims pending in *three* separate forums (this Court, Los Angeles Superior

16    Court, and the Delaware Court of Chancery).  This exposes the parties to the

17    unreasonable risk of duplicative litigation and inconsistent rulings.  As

18    demonstrated in Defendants' moving papers, the Supreme Court's decision in

19    *Colorado River Water Conservation District v. United States*, 424 U.S. 800 96 S.

20    Ct. 1236, 47 L.Ed.2d 483 (1976), authorizes a stay of those claims in favor of the

21    more advanced parallel proceedings in Delaware, the state whose law applies.

22            A *Colorado River* stay would divide the Countrywide litigation

23    efficiently and avoid overlap.  This litigation began as a derivative action for

24    damages on Countrywide's behalf, alleging only that Countrywide's directors and

---

25  [24]    *Crompton*, 2005 WL 3797695, at *3 (finding a SLUSA stay appropriate

26  because "the risk of inconsistent rulings between this Court and the state court would be high given the overlap between the state and federal complaints");

27  *Cardinal Health*, 365 F. Supp. 2d at 876.

28  [25]    SLUSA Opp. Br. at 11–12.

1   officers had mismanaged Countrywide and engaged in fraudulent stock sales over a

2   four-year period from 2004 through 2007.  On February 15, 2008, the Federal

3   Plaintiffs added *class-action* claims that challenged Countrywide's January 11,

4   2008 merger agreement with BofA.  The Federal Plaintiffs brought these new

5   claims on behalf of Countrywide's shareholders, not Countrywide itself, to obtain

6   only injunctive relief relating to the proposed merger.

7           A month earlier, however, other Countrywide shareholders filed suit in

8   Delaware, where Countrywide is incorporated, to obtain the same injunctive relief

9   from the same transaction.  Shortly thereafter, the Delaware Court of Chancery

10  consolidated the litigation and appointed a lead plaintiff, and it recently ordered a

11  schedule that provides for merger-related document discovery (which has already

12  begun), expert disclosures, fact and expert depositions, and a May 20, 2008 hearing

13  on plaintiffs' preliminary injunction motion.  The Federal Plaintiffs' new class

14  claims risk forcing both the parties and the Court to duplicate those efforts or,

15  worse, potentially contradict them.  Either way, this Court should stay the Federal

16  Plaintiffs' new merger-related claims because they can be resolved more efficiently

17  in Delaware, which has vast experience in resolving merger litigation and an

18  overarching interest in consistently applying its own law.  *See, e.g.*, *Teamsters*

19  *Local Nos. 175 & 505 Pension Trust Fund v. IBP, Inc.*, 123 F. Supp. 2d 514, 519

20  (D.S.D. 2000) (staying merger claims in favor of more "expeditious resolution" in

21  Delaware Chancery Court, which "has earned a reputation for its expertise

22  concerning corporate governance" through its "daily interpretation" of Delaware

23  corporate law) (internal quotation omitted); *Iron Workers of W. Pa. Pension Plan v.*

24  *Caremark Rx, Inc.*, Civ. A. No. 3:06-1097, 2007 WL 60927, at *6 (M.D. Tenn. Jan.

25  5, 2007) (staying merger claims because "Delaware Court of Chancery is a more

26  than adequate forum for the parties to litigate their Delaware cause of action").

27

28

DEFENDANTS' REPLY IN SUPPORT OF
STAY MOTIONS

1.   ***Colorado River* and its progeny authorize this Court to stay Plaintiffs' merger-related class-action claims.**

Contrary to the Federal Plaintiffs' suggestion, *Colorado River* allows a district court to stay all or part of an action before it.  The only question is whether the state court can fully and finally decide the claims that the federal court has stayed; in other words, whether "the state proceeding for which the federal case has been stayed . . . will have *res judicata* effect on all or an important part of the subsequent federal case."  *Michelson v. Citicorp Nat'l Servs.*, 138 F.3d 508, 514 (3d Cir. 1998).  Consistent with that principle, district courts in this Circuit routinely issue partial stays of some class-action claims (that state courts could resolve) but not others (that only the federal court could resolve).[26]

Such partial stays are entirely consistent with the cases that Plaintiffs argue forbid them.  The courts in each of those cases declined stays because they would have frozen federal claims that state courts could not adjudicate.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19–21, 103 S. Ct. 927, 938-40, 74 L.Ed.2d 765 (1983) (declining to stay parallel federal claims because Federal Arbitration Act prevented state court from resolving contract claims involving arbitration provision); *Holder v. Holder,* 305 F.3d 854, 868 (9th Cir. 2002) (declining to stay federal action because international treaty provided federal right to challenge state-court custody proceeding later); *Intel Corp. v. Advanced*

---

[26]   *See, e.g., Daugherty v. Oppenheimer & Co., Inc.*, Civ. A. No. 06–7725, 2007 WL 1994187, at *6 (N.D. Cal. Jul. 5, 2007) (staying seven class-action claims in favor of parallel state-court litigation but allowing three non-duplicative federal claims to continue); *Gintz v. Jack in the Box, Inc.*, Civ. A. No. 06–02857, 2006 WL 3422222, at *7 (N.D. Cal. Nov. 28, 2006) (staying putative California—but not nationwide—class claims because California state court could resolve California class claims that arose under California law); *see also Ross v. U.S. Bank Nat'l Ass'n*, 2008 WL 413740, at *5 (N.D. Cal. Feb. 13, 2008) (granting stay "to the Oregon class only" in favor of parallel Oregon action but allowing federal litigation on behalf of other putative classes to proceed); *accord Thomas v. Acme Scientific Mold Polishing Serv. & Supply*, Civ. A. No. 93-5314, 1993 WL 469974, at *4, 6 (N.D. Ill. Nov. 10, 1993) (staying "one of the plaintiff's claims" in favor of parallel state-court litigation but permitting exclusively federal claim to proceed).

DEFENDANTS' REPLY IN SUPPORT OF STAY MOTIONS

*Micro Devices*, 12 F.3d 908, 913 (9th Cir. 1993) (declining stay because state-court action to confirm arbitration award was not parallel to, and thus may not have precluded, federal copyright claims).  As Judge Hamilton in the Northern District recently held, "Neither *Holder* nor *Intel* supports plaintiff's argument that the *Colorado River* doctrine may not be used to dismiss or stay only part of an action." *Daugherty*, 2007 WL 1994187, at \*6; *see also Gintz*, 2006 WL 3422222, at \*6 (rejecting argument that *Intel* prevented partial *Colorado River* stay).

There is no doubt that the Delaware Chancery Court can completely resolve the merger-related class-action claims that Defendants ask this Court to stay.  Both the California and the Delaware merger-related claims seek relief for the *same* putative class against the *same* Countrywide directors based on the *same* transaction with BofA.  Even the alleged conduct underlying the directors' alleged fiduciary breach is the same:  both actions assert that Countrywide's directors are using the merger to try to "escape" liability in pending derivative litigation against them.[27]  The Delaware court need not, as Plaintiffs argue, "value" those derivative claims to resolve the merger litigation.  (Pls.' Opp. Br. at 8.)  It must simply decide whether the proposed merger's alleged effect on those claims—regardless of their merits, which no court has yet determined—interfered with the Countrywide directors' duties of loyalty to Countrywide's shareholders.  In that regard, the Delaware court will specifically decide whether Countrywide's shareholders have received full and accurate disclosure of all material facts affecting their vote—those relating to the derivative claims along with many others—so they can decide for themselves whether the merger is in their interests.  *See La. Mun. Police*

---

[27]     *Compare* Delaware Compl. ¶ 79 ("The Individual Defendants seek to use the Proposed Acquisition . . . as a means to indemnify themselves and escape potential liability arising from . . . the Derivative Actions currently pending against them.") (Winawer Stay Dec. Ex. 4), *and id.* ¶¶ 8, 53, 66–67, 70, *with* Compl. ¶¶ 355 ("Such a dramatically low price was accepted . . . to extinguish the significant personal liability of the Directors in pending derivative litigation . . . ."), 362–363, 369.

DEFENDANTS' REPLY IN SUPPORT OF STAY MOTIONS

1   *Employees' Ret. Sys. v. Crawford*, 918 A.2d 1172, 1188–89 (Del. Ch. 2007).  And

2   the Delaware court is best situated to resolve the merger-related claims, as it has the

3   greatest interest in interpreting its corporate law.  *See In re Topps Co. S'holders*

4   *Litig.*, 924 A.2d 951, 963–64 (Del. Ch. 2007) ("[I]ssues of appropriate director

5   responsibility [in a merger] should be addressed ... by Delaware courts ... [which]

6   are better positioned to provide a reliable answer about Delaware corporate law.").

7          Plaintiffs erroneously assume that Defendants seek to stay the

8   derivative claims, too.  They argue, for example, that (i) a stay in favor of the

9   Delaware court is inappropriate because this Court has exclusive jurisdiction over

10  Plaintiffs' federal securities claims (Pls. Opp. Br. at 16–17); and (ii) the Court

11  cannot stay this case because the Delaware Chancery Court cannot resolve *all* of the

12  issues between the parties (*id.* at 15–16).  Both arguments miss the point.

13  Defendants are not asking the Court to stay Plaintiffs' derivative and securities

14  claims in deference to the Delaware Chancery Court.  In asking Judge Chaney to

15  stay her hand, Defendants have made clear that those claims belong in *this* Court

16  and the merger-related claims in the Chancery Court because those two courts are

17  best-equipped to resolve the respective claims.  The transfer motion that the

18  Countrywide Defendants recently filed in Delaware federal court also illustrates the

19  point.  That Delaware federal action asserts exclusively derivative claims against

20  Countrywide's directors relating to their alleged stock sales and oversight of

21  Countrywide's business.  Accordingly, the Countrywide Defendants moved to

22  transfer those claims to this Court—where parallel derivative claims are pending—

23  to avoid duplicative litigation.  But both sets of derivative claims differ greatly from

24  the class-action claims proceeding in the Delaware Chancery Court, which

25  challenge the proposed merger with BofA under Delaware corporate law.

26

27

28

DEFENDANTS' REPLY IN SUPPORT OF
STAY MOTIONS

**2.      The *Colorado River* balancing test favors a stay of Plaintiffs' merger-related class-action claims.**

The *Colorado River* stay analysis requires courts to consider (i) whether federal or state law governs the claims, (ii) the likelihood of avoiding piecemeal litigation, (iii) whether the state court will adequately protect the federal plaintiffs' rights, and (iv) which court first obtained jurisdiction over the subject claims. *See Holder*, 305 F.3d at 870.

These factors all favor staying Plaintiffs' merger-related class-action claims in favor of the parallel Delaware action. Indeed, Plaintiffs do not dispute the first two factors: Delaware law governs their merger-related claims, and a stay would avoid piecemeal litigation of parallel claims. (Pls.' Opp. Br. at 20.) *See Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988) ("Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results."). The stay that Defendants propose would divide the litigation neatly and without overlap: this Court would address the pre-merger derivative claims, while the Delaware Chancery Court would address the merger-related class claims.

The third factor, which court first obtained jurisdiction, also favors a stay. While Plaintiffs point out that the derivative claims here preceded the Delaware class claims, that is irrelevant. (Pls.' Opp. Br. at 18–19.) Plaintiffs cannot dispute that the first Delaware complaint challenging the merger was filed on January 14, 2008, more than a month before the Federal Plaintiffs filed their claims challenging that transaction here. Thus, the Delaware Chancery Court was the first to obtain jurisdiction over the claims for which Defendants seek a *Colorado River* stay.

As to the final factor, whether the state court can protect their rights, Plaintiffs do not contest the Delaware Chancery Court's adequacy. Instead, they

DEFENDANTS' REPLY IN SUPPORT OF STAY MOTIONS

1   attack the Delaware lead plaintiffs for allegedly being less "sophisticated."[28]  That

2   mudslinging is irrelevant to the *Colorado River* analysis.  *See Romine v.*

3   *Compuserve Corp.*, 160 F.3d 337, 340 (6th Cir. 1998) (holding that "the

4   nonidentity of the named class representatives" does not affect the *Colorado River*

5   analysis); *De Simas v. Big Lots Stores, Inc.*, 2007 WL 686638, at *7 (N.D. Cal.

6   Mar. 2, 2007) (staying federal claims where state and federal actions were brought

7   by "overlapping classes").  If Plaintiffs were truly concerned about the Delaware

8   plaintiffs' competence, they could intervene in the Delaware action.[29]  And unlike

9   the Federal and *Garber* Plaintiffs, the Delaware plaintiffs are not represented by

10  conflicted counsel.  Plaintiffs' counsel here and in *Garber* represent *both*

11  Countrywide derivatively and a shareholder class adverse to Countrywide, which

12  may cause them, even unconsciously, to favor one set of claims over the other.  *See*

13  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 377–78 (9th Cir. 1995) (observing that

14  plaintiffs' counsel "may have had a conflict of interest representing both derivative

15  and securities plaintiffs").

16          Plaintiffs assert that a fifth factor, which identifies the court that first

17  assumed jurisdiction over the "property," weighs against a stay because Plaintiffs

18  sued first to recover the proceeds from the Countrywide Defendants' stock sales

19  that Plaintiffs challenge derivatively.[30]  That factor is irrelevant, however, because

20

---

21  [28]    *Id.* at 19.

22  [29]    *See, e.g., Green v. City of Tucson*, 217 F.3d 1081, 1084 (9th Cir. 2000)
    (affirming federal court's abstention "because the plaintiffs had an adequate
23  opportunity to intervene in the state proceedings to have their federal claims
    heard"), *rev'd on other grounds*, 255 F.3d 1086 (9th Cir. 2001); *Levy Investments v.*
24  *James River Group, Inc.*, No. 07–CVS–820, 2007 NCBC LEXIS 37, at *3 (N.C.
    Super. Ct. Sept. 19, 2007) (staying merger-related claims because plaintiff could
25  "pursue its remedies in the Delaware action by the means available to it there"); *see*
    *also* Del. Court of Chancery Rule 24(a) (permitting intervention as of right "when
26  the applicant claims an interest relating to the property or transaction which is the
    subject of the action").
27

28  [30]    Pls.' Opp. Br. at 19.

DEFENDANTS' REPLY IN SUPPORT OF
                                     STAY MOTIONS

(i) Defendants are not moving to stay the derivative claims in favor of the Delaware Chancery litigation, (ii) the merger-related claims involve no property, and (iii) stock-sale proceeds in any event are "not the sort of tangible physical property" that courts consider under *Colorado River*.[31]  *See Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1368 (9th Cir. 1990).

## III.  CONCLUSION

This motion is critical to Defendants' efforts (which also include a stay motion in *Garber*) to corral the three sets of overlapping lawsuits that, if unchecked, threaten to burden the parties and the courts with duplicative and chaotic litigation.  Countrywide's proposed merger with Bank of America is no reason to engage in such piecemeal litigation.  The merger will not "extinguish" Plaintiffs' derivative claims, but will merely pass them to the surviving BofA entity, which would retain the ability to recover for the conduct that Plaintiffs allege.  The PSLRA and SLUSA likewise prohibit Plaintiffs' efforts to obtain "emergency" expedited discovery and injunctive relief before their complaint can be tested by a motion to dismiss.  This Court can and should enforce the PSLRA's mandatory discovery stay in this action, and if Judge Chaney does not stay her own hand, impose a stay under SLUSA preventing the *Garber* Plaintiffs from conducting discovery that would undermine the PSLRA's discovery prohibition.  And to prevent duplicative litigation and inconsistent rulings, the Court should stay the Federal Plaintiffs' merger-related claims under *Colorado River* in view of the more advanced litigation in Delaware Chancery Court, which has the greatest interest in interpreting its corporate law.

---

[31]     *Holder* also specifies an additional factor that is not relevant here—the inconvenience of the federal forum.  *Holder*, 305 F.3d at 870.  Defendants do not argue that the federal forum is itself inconvenient, and Plaintiffs' forum preferences are irrelevant.  *See Travelers Indem. Co.*, 914 F.2d at 1368 ("The question in the end is not whether the party opposing the stay can demonstrate that the federal forum is a 'better' or 'more convenient' forum.") (quoting *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1192 (5th Cir. 1988)).

DEFENDANTS' REPLY IN SUPPORT OF
STAY MOTIONS

Dated:      March 13, 2008          GOODWIN PROCTER LLP

By: \s\Lloyd Winawer
          Lloyd Winawer

10250 Constellation Blvd., 21st Floor
Telephone:  (310) 788-5177
Facsimile:   (310) 286-0992

Brian E. Pastuszenski (Pro Hac Vice)
Stuart M. Glass  (Pro Hac Vice)
53 State Street
Exchange Place
Boston, MA  02109
Telephone:  (617) 570-1000
Facsimile:   (617) 523-1231

OF COUNSEL

Eric M. Roth (Pro Hac Vice Pending)
EMRoth@wlrk.com
Stephen R. DiPrima (Pro Hac Vice Pending)
SRDiPrima@wlrk.com
Graham W. Meli (Pro Hac Vice Pending)
GWMeli@wlrk.com
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone:  (212) 403-1000
Facsimile:   (212) 403-2000

*Attorneys for Defendants Angelo R. Mozilo, Robert J. Donato, Harley W. Snyder, Jeffrey M. Cunningham, Martin R. Melone, Oscar P. Robertson, Keith P. Russell, Robert T. Parry, David Sambol, Eric P. Sieracki, and Henry G. Cisneros*

O'MELVENY & MYERS LLP

By:  /s/  Seth Aronson
Seth Aronson (S.B. #100153)
saronson@omm.com

400 South Hope Street
Los Angeles, CA  90071-2899
Telephone:  (213) 430-6000
Facsimile:   (213) 430-6407

*Attorneys for Defendant Bank of America Corporation*

- 26 -

DEFENDANTS' REPLY IN SUPPORT OF STAY MOTIONS